LEROY WARE, Plaintiff, v. J. C. SANDERS, Warden of the State penitentiary at Fort Madison, Iowa, Respondent.

*Habeas Corpus*: JURISDICTION. The statute directing that an application for a writ of *habeas corpus* be made to the most convenient judge does not expressly provide that such judge has exclusive jurisdiction of the matter, nor does it command a more

remote judge to whom the application may be presented to refuse the writ; the statute in this respect is simply directory and the writ may be granted by a judge not the nearest one to the petitioner.

**Same:** NATURE OF WRIT: RULES GOVERNING ITS APPLICATION: CONSTRUCTION. The writ of *habeas corpus* is one of right and of ancient origin; and as a preservation of its benefits is a matter of great importance to the people the rules providing for its employment against unlawful restraint will be liberally construed and applied, and when ambiguous or doubtful will be liberally interpreted, so as to promote the effectiveness of the proceedings.

**Same:** JURISDICTION OF SUPREME COURT: STATUTE. The Supreme Court has original jurisdiction in *habeas corpus* proceedings, and when an application for a writ is made to that court or a judge thereof the statute providing that the application shall be made to the judge most convenient to the applicant has no application; since the original jurisdiction of the Supreme Court is coextensive with the State.

**Constitutional law:** PAROLE OF CONVICTS: ABRIDGMENT OF PARDONING POWER. The statute creating the board of parole and providing for the parole of convicts is not unconstitutional, as intrenching upon the power of the governor to grant pardons, reprieves and commutation of sentence; as the governor's power in that regard is in no manner abrogated, restricted or removed by the statute.

**Same:** *Ex post facto* LAW. Nor is the statute unconstitutional as an *ex post facto* law when applied to the parole of prisoners sentenced before the act took effect; since the act does not increase the punishment, and no convict is obligated to accept a parole.

**Same:** PAROLE OF PRISONERS: INDETERMINATE SENTENCE: STATUTES: CONSTRUCTION. The statutes creating a board of parole and providing for the parole of convicts applies to all persons confined in the penitentiaries, both at the time and subsequent to the passage of the act, although the same contains an indeterminate sentence system which, under the constitutional prohibition of *ex post facto* laws could only apply to those convicted after the act took effect; as the scheme of the law is to create a new system of punishment as broad as permissible, which appears from its provisions excepting from the indeterminate sentence persons convicted before the act took effect, and preserving the rights of all persons thereafter convicted for crimes committed prior to the act.

SATURDAY, FEBRUARY 19, 1910.

*Habeas corpus* proceedings.    The material facts are stated in the opinion.   Writ *sustained.*

*W. L. Livingston* and *Read & Read,* for plaintiff.

*K. E. Sallman* and *H. H. Carter,* for respondent.

WEAVER, J.—The plaintiff, Leroy Ware, was for several years cashier of a bank at Seymour, Iowa.    In the year 1907 the bank was found to be insolvent.    Twenty-two several indictments were returned against Ware charging him with making false entries in the books, and with embezzlement and with fraudulent banking.   At the March, 1908, term of the district court of Wayne County the accused withdrew his plea of not guilty to one of the indictments charging him with making a false entry in the books of the bank, and entered a plea of guilty, with an agreement by the State, approved by the court, that all of the other cases against him should be continued on his motion, and none of them brought to trial during his term of imprisonment under the sentence to be pronounced against him in the case in which the plea of guilty was taken.    On said plea judgment was entered, and the accused sentenced to confinement in the penitentiary at Ft. Madison for a term of five years.    A *mittimus* was thereupon issued in the usual form, directing the sheriff to execute the judgment by delivering the prisoner into the custody of the warden at the penitentiary at Ft. Madison for imprisonment therein, according to the terms of his sentence.    The sheriff performed his duty under said writ, and obtained and returned the voucher of the warden acknowledging having received said prisoner into his custody.   One year and two months later the Board of Parole, acting as it claimed within the authority given it by law, granted to said Ware a parole, the terms of which were reduced to writing in words as follows:

## Parole Agreement.

Know all men by these presents: That the Board of Parole of the State of Iowa, desiring to test the ability of Leroy Ware, an inmate of penitentiary, to refrain from crime and lead an honorable life, do, by virtue of the authority conferred upon them by law, hereby parole the said Leroy Ware, and allow him to go on parole outside the buildings and inclosures of said penitentiary, subject however, to the following rules and regulations:

1st.—He shall proceed at once to the place of employment provided for him, viz., with C. C. Bullard, Ft. Madison, Iowa, and there remain during the period of his parole.

2d.—In case he finds it desirable to change his employment or residence, he shall first obtain the written consent of the Board of Parole, through the secretary.

3d.—He shall, on the 1st day of every month, until his final release forward by mail to the Board of Parole a report of himself, stating whether he has been constantly at work during the last month, and if not, why not; how much he has earned and how much expended, together with a general statement as to his surroundings and prospects, which report must be indorsed by his employer.

4th.—He shall, in all respects, conduct himself honestly, avoid evil associations, obey the law, and totally abstain from smoking cigarettes and from the use of intoxicating liquors or visiting places wherein it is sold, and he shall avoid all places of evil repute.

5th.—As soon as possible after reaching his destination, he shall report to Mr. C. C. Bullard, show him his parole, and at once enter upon the employment provided for him. He shall also report by mail his arrival at destination.

6th.—He shall, while on parole, remain in the legal custody and under the control of said Board of Parole.

7th.—He shall be liable to be retaken and again confined within the inclosure of said penitentiary for any reason that shall be satisfactory to the Board of Parole, and at its sole discretion, until he receives notice from the secretary that his final release has been ordered.

8th.—To secure his absolute pardon, he must, at the

expiration of the parole period, which can be in no case less than one year, procure the recommendation of the Board of Parole.

The Board of Parole has a continued interest in the subject of this parole, and he need not fear nor hesitate to freely communicate with the secretary in case he lose his situation or becomes unable to labor by reason of sickness or other disability.

During this period of parole, he may rely upon the aid and counsel of the said board and the secretary.

Given in duplicate this 8th day of May, 1909, by authority of the Board of Parole.

W. H. Berry,

J. M. Emmert,

P. A. Smith,

Board of Parole.

Countersigned:

B. W. Garrett, Secretary.

### Acceptance of Parole.

I, Leroy Ware, an inmate of the penitentiary, hereby declare that I have carefully read and do clearly understand the contents and conditions of the above parole, and I hereby accept the same, and do pledge myself honestly to comply with said conditions.

Signed in duplicate, this 14th day of May, 1909.

Leroy Ware.

### Certificate of Parole.

I, B. W. Garrett, hereby certify that I am secretary of the Board of Parole; that as such secretary I have the custody of the records of said Board of Parole; that the foregoing is a true and correct copy of the order of parole issued by said board to Leroy Ware, as fully and completely as the same is of record in the office of said board.

B. W. Garrett, Secretary.

### Warden's Return.

To the Board of Parole: Sirs—This parole came into my hands May 9, 1909, and by virtue thereof and subject

to the conditions therein imposed, I permitted the within
named Leroy Ware to go outside the inclosure of this
institution this 14th day of May, 1909, at the hour of
12:30 a. m.

                              J. C. Sanders, Warden.

Immediately after this action by the Board of Parole
had been announced warrants of arrest were issued, pre-
sumably at the instance of the county attorney of Wayne
County, upon some of the indictments still pending against
Ware, and he was arrested thereunder at Ft. Madison.
Application for writ of *habeas corpus* was presented to
Judge Bank of Lee County, who refused to entertain the
proceeding, on the ground that the proper jurisdiction for
such proceeding was in the court where the judgment of
imprisonment was rendered. The sheriff then removed
the petitioner from Lee County to the Wayne County jail,
where he remained for several weeks, when he was re-
leased on bail. At the October, 1909, term of said dis-
trict court the motion of the accused for continuance of
the cases against him, pursuant to the agreement made
when he entered a plea of guilty in the case in which he
had been sentenced, was sustained. Thereafter, and at
the same term, the county attorney presented to the court
a motion in the following form:

### State of Iowa v. Leroy Ware.

#### Application for Recommitment of the Defendant to the Penitentiary at Ft. Madison.

Comes now K. E. Sallman, county attorney in and
for Wayne County, Iowa, and states to the court that he
believes, and has reason to believe, that the defendant has
left the penitentiary by his own leave, and is now at large,
within the jurisdiction of this court, and therefore asks
that the defendant be recommitted to the penitentiary at
Ft. Madison, Iowa, to serve the balance of the unexpired
sentence imposed upon him at the March term, 1908, of

this court, upon his plea of guilty, under case No. 7,411, and as grounds thereof states:

First.   That the said defendant was sentenced by this court at the March term, 1908, for a period of five years, at hard labor in the penitentiary at Ft. Madison, which term has not expired.

Second.   That on or about May 14, 1909, the said defendant was permitted to be released from said penitentiary by the warden thereof, by order of the Board of Parole of the State of Iowa, and by reason of said pretended release by said warden, and by order of said Board of Parole, the defendant is now at large.

Third.   That the pretended release by said warden, under order of said Board of Parole, was wholly without authority of law, in this:   That the offense of which said defendant was sentenced in case No. 7,411 was committed prior to July 4, 1907, and that the acts creating said Board of Parole and defining its powers and duties does not apply to offenses committed prior to July 4, 1907, and that the act of said warden, under the order of said Board of Parole, was absolutely void and without authority of law, in that said Board of Parole had no jurisdiction over said defendant for the reason above set forth.

Fourth.   That the said act of the said Board of Parole in paroling said defendant and permitting him to be at large was unconstitutional and without authority of law, in that it is an attempt by said Board of Parole to interfere with a valid judgment and sentence imposed by this court in a case wherein the offense was committed prior to July 4, 1907.

Wherefore, K. E. Sallman, county attorney in and for Wayne County, Iowa, asks the court to make such order herein that will carry out the sentence and judgment pronounced by this court in said case No. 7,411, and that the defendant be recommitted to the state penitentiary at Ft. Madison, Iowa, to serve out the remainder of said sentence.

K. E. Sallman,<br>
County Attorney, Wayne Co., Iowa.

The court sustained the motion and entered an order that the defendant (plaintiff herein) be "recommitted to

the penitentiary at Ft. Madison to serve out the remainder
of the sentence imposed March 10, 1908," and that a
*mittimus* issue accordingly.    A warrant reciting these
terms was thereupon issued and delivered to the sheriff,
who in obedience thereto returned the petitioner to the
warden at Ft. Madison "to serve out the remainder of
his term."    On October 30, 1909, the petitioner by his
counsel presented to Hon. Emlin McClain, a judge of this
court, an application for a writ of *habeas corpus* to deter-
mine the validity of the order of the district court by
which he had been rearrested and reconfined within the
walls of the penitentiary.    Upon reading said petition
Judge McClain ordered the writ to issue returnable before
the full bench.

There is no dispute as to the facts, and the questions
of law involved have been submitted upon written briefs.
That the position of the warden in this case may not be
misconstrued it should be said that he has not denied, and
does not of his own motion now deny, the authority of
the Board of Parole or the validity of its order with refer-
ence to the confinement of said Ware.    Said issue is raised
by the county attorney of Wayne County on behalf of
the prosecution against Ware, and in support of the au-
thority of the district court to make said order of recom-
mitment; the attitude of the warden being simply that of
an officer who wishes to know what may be his duty in
the premises, and to perform it.

1.    Both by motion and in argument counsel for the
State attack the jurisdiction of this court to entertain or
pass upon plaintiff's petition, because the application for
1. *Habeas corpus*: the writ was not made to the court or judge
jurisdiction.    most convenient to the petitioner, as provided
by Code, section 4420.    While the section referred to pro-
vides a general rule directing the application to be made
to the most convenient judge, it does not expressly provide
that such judge has exclusive jurisdiction, nor does it com-

mand the more remote judge to whom it may be presented
to refuse the writ, but the language is that he "may refuse
the same." The phrase "convenient in point of distance" is
one of quite indefinite meaning, and often might reason-
ably be applied to any one of several judges residing in
different localities. The statutory restriction serves to put
the judge upon his guard, and suggest inquiry into the pro-
priety of his entertaining the proceeding and the good faith
of the applicant in coming to him, but we think it is not a
jurisdictional question. If, as is provided in some States,
the statute required the matter to be first presented to a
judge of the county or district where the plaintiff is re-
strained, an objection to an application first made elsewhere
would raise a very different question; for in such case a
territorial limit is clearly and explicitly defined, and no
room is left for construction. It has been held, however,
in some States that a statutory restriction as to locality
in such cases has no application where the writ is sought
from the Supreme Court or a justice thereof. *People v.
Cowles,* 59 How. Pr. (N. Y.) 287; *Ex Parte Lynn,* 19
Tex. App. 120; *Ex Parte Kittrel,* 20 Ark. 499. More-
over, it is at least an open question whether the jur-
isdiction of this court for the issuance of the writ may
not be invoked independent of statute, under its original
and constitutional power "to issue all writs
and process necessary to secure justice to
parties and exercise a supervisory control
of inferior judicial tribunals throughout the
State." Constitution Iowa, article 5, section 4. It is a
writ of right of very ancient origin, and the preservation
of its benefit is a matter of the highest importance to the
people. The regulations provided for its employment
against an alleged unlawful restraint are not to be con-
strued or applied with overtechnical nicety, and where am-
biguous or doubtful should be interpreted liberally to pro-
mote the effectiveness of the proceeding. *Re Pierce,* 44

*2. SAME: nature of writ: rules governing its application: construction.*

Wis. 411; *Simmons v. Georgia Iron & Coal Co.,* .117 Ga.
305 (43 S. E. 780, 61 L. R. A. 739). In the last cited
case, where question was raised whether the particular
judge issuing the writ should have entertained the proceed-
ing, it was held that, as the party against whom the writ
issued appeared and produced the petitioner and pleaded
to the petition, objection to the propriety of the judge's
action should be overruled. The same principle appears to
be affirmed in *Broomhead v. Chisolm,* 47 Ga. 390; Church
on Habeas Corpus, section 156; *Re Ross,* 3 Practice Rep.
(Can.) 301. In the *Broomhead* case the court, respond-
ing to an objection to the jurisdiction, said that whatever
might have been the decision had the respondent declined
to produce the prisoner it was unnecessary to consider;
for, "having brought him before the judge in obedience
to the writ, we are not disposed to scan too critically the
mode in which he got there, but hold that, being .there,
the judge had authority to pass such order as the nature
of the case demanded."

The very fact that the *habeas corpus* statute provides
(Code, section 4419) for the original jurisdiction in the
Supreme Court suggests, and we think fairly implies, a
territorial jurisdiction not restricted to any
particular locality of the State. It is not
a local court. Though it sits in Polk County
the jurisdiction conferred upon it, whether appellate or
original, is co-extensive with the State. The foregoing
discussion we think is in strict accord with the long estab-
lished and practical interpretation which has been put up-
on the statute in this State. In *Ex parte Anderson,* 16
Iowa, 595, Judge Dillon, a member of this court, granted
a writ of *habeas corpus* to determine the validity of the
detention of a minor in the military service of the United
States. In *Curley's* case, 34 Iowa, 184, a writ was granted
by Cole, justice of this court, and it was held that no
appeal was allowable from his decision thereon. In *Ex*

3. SAME: juris-
diction of
supreme court:
statutes.

*parte Tuichner,* 69 Iowa, 393, the applicant being confined in the jail of Sac County in pursuance of a judgment of the district court, which imposed a fine upon him, but failed to specify the number of days he must serve for its nonpayment, presented a petition to a member of this court for a writ of *habeas corpus* to test the validity of his imprisonment. The writ was allowed, the case heard by the entire bench, and the prisoner discharged. Probably the most noted case of this nature in our own decisions is *Ex parte Holman,* 28 Iowa, 88, involving the right to a writ from a state court for the release of certain county officers from the custody of a United States marshal, who held them under a commitment for contempt by a federal court. The writ was issued by Beck, J., who upon hearing in chambers ordered the release of the petitioners. The matter was then brought before the full bench in the form of an appeal, both parties waiving and requesting the court not to consider the question whether a right to appeal existed, and on this hearing each of the judges filed an extended opinion, the majority holding that the prisoners should be remanded to the custody of the marshal. Other writs have been allowed and disposed of by this court, or by members thereof, in cases where no opinion has been filed.

The right to issue the writ of *habeas corpus,* like that to issue the writ of *certiorari,* is a very appropriate, if not necessary, attribute of an appellate court under our system of government, which administers justice according to the principles of the common law. While it is often and truly said that *habeas corpus* can not properly be made to serve the office of a writ of error, yet the power given to the Supreme Court to entertain such proceedings is a branch or phase of its appellate jurisdiction, and furnishes a direct and summary method by which, in the interest of liberty, the power and authority of an inferior court to render a given order or judgment by which a

citizen is restrained of his liberty may be determined
without delay. This view of the nature of *habeas corpus*
proceedings in our court of last resort finds support in
numerous precedents. For instance, in *Clarke's case,* 100
U. S. 399 (25 L. Ed. 715), the petitioner, being in cus-
tody under an alleged illegal process issuing from a trial
court, applied to Justice Strong of the Supreme Court of
the United States, who allowed the writ, but ordered the
hearing to be had before the full bench. Objection being
made to the jurisdiction, the court said:

It is clear that the writ, whether acted upon by the
justice who issued it, or by this court, would in fact re-
quire a revision of the action of the circuit court by which
the petitioner was committed, and such revision would
necessarily be appellate in its character. This appellate
character of the proceeding attaches to a large portion of
cases in *habeas corpus,* whether issued by a single judge
or by a court. The presence of this feature in the case
was no objection to the issue of the writ by the associate
justice, and is essential to the jurisdiction of this court.
The justice who issued it could undoubtedly have disposed
of the case himself, though not, at the time, within his
own circuit. A justice of this court can exercise the power
of issuing a writ of *habeas corpus* in any part of the
United States where he happens to be. But as the case is
one of which this court also has jurisdiction, if the jus-
tice who issued the writ found the questions involved to be
of great moment and difficulty, and could postpone the case
here for the consideration of the whole court without injury
to the petitioner, we see no good reason why he should not
have taken this course, as he did.

In *Re Virginia,* 100 U. S. 339 (25 L. Ed. 676),
while suggesting in effect that if *habeas corpus* were to be
classed as an original proceeding, there would be doubt
of its jurisdiction, the court proceeds to say: "But the
appellate power of this court is broader than its original,
and generally—that is, in most cases—it may be said that

the issue of a writ of *habeas corpus* by us, when it is directed to one of our inferior courts, is an exercise of our appellate jurisdiction." See, also, *Ex parte 'Hung Hang,* 108 U. S. 552 (2 Sup. Ct. 863, 27 L. Ed. 811). In *Ex parte Bollman,* 4 Cranch, 75-100 (2 L. Ed. 554), Chief Justice Marshall said this jurisdiction of the Supreme Court to entertain *habeas corpus* proceedings to determine the validity of an order or judgment of imprisonment is "clearly appellate. It is the revision of a decision of an inferior court by which a citizen has been committed to gaol." The case at bar comes clearly within this definition, and the jurisdiction of this court to entertain it can not bé doubted. To avoid misapprehension it may be well to add that this conception of the jurisdiction of the Supreme Court in *habeas corpus* proceedings serves to narrow and limit its exercise to cases which involve a review of the validity of the act, order, or judgment of an inferior court, and that in all cases, where the writ is sought for any other purpose, or to contest any other. disputed right, the allowance of the writ should be ordered by a trial court or a judge thereof.

II. The statute creating the Board of Parole (chapter 192, Laws 32d General Assembly) provides, among other things, that said board "shall have power to establish rules and regulations under which it may allow prisoners within the penitentiaries other than prisoners serving life terms to go upon parole outside of the penitentiary buildings, inclosures and appurtenances but to remain while on parole in the custody of the wardens and under the control of the Board of Parole and subject at any time to be taken back and confined within the penitentiary." That this language standing alone is broad enough to justify the parole in this case if the law be valid there can be no doubt, but it is asserted by counsel that the statute is unconstitutional, and that in any event

4. CONSTITU-
TIONAL LAW:
parole of
convicts:
abridgment
of pardoning
power.

it contains other terms which render it inapplicable to the petitioner's case. The constitutional objection is grounded upon the thought that it in some manner trenches upon the power vested in the Governor of the State to grant pardons, reprieves, and commutations. The objection is unsound. The power of the Governor to pardon or reprieve a criminal, or to commute a sentence pronounced by a court, is in no manner abrogated, restricted, or removed by this statute. Whether punishment may be imposed at all, and, if so, its character and extent, is a matter of statute alone; and, if the Legislature in its wisdom concludes it to be sound policy to offer a premium to good conduct and reform in a prisoner by tendering him an amelioration of the rigor of his punishment, we are unable to see in what manner this constitutes the slightest interference with the exercise of executive clemency. The Governor does not pronounce sentence. His official cognizance of any judgment imposing punishment for crime extends no further than to inquire whether there be any reason which in his judgment requires or justifies him in relieving the condemned person in whole or in part from the penalty so imposed. In other words, generally speaking, the exercise of this phase of executive power is called for only when hope for relief for the convict under the ordinary form of law has been exhausted. It may be that the statute in question will serve to decrease the volume of appeals to the Governor for the exercise of his prerogative in this respect, but the power is not diminished simply because the occasion for its use may be less frequent.

III. Again, it is said that this statute went into effect July 4, 1907, and to make it apply to persons convicted of offenses committed before that date would render it unconstitutional and void, as being an ex post facto law. An ex post facto law is one which makes criminal and punishable that which was lawful and innocent when done, or a law

5. SAME: *ex post facto* law.

which aggravates a crime and makes it a greater offense than it was when committed, or a law which changes the punishment and makes it greater than was imposed by the law as it stood when the crime was committed. *Calder v. Bull,* 3 U. S. 386 (1 L. Ed. 648). As the statute now in question does provide in effect that every person convicted of a felony shall stand committed to prison for the maximum term authorized by law, subject to the power of the board to parole him on stated conditions, it is very possible that in the absence of any saving clause a defendant convicted of a felony antedating this statute could properly question the constitutionality of the provision for an indeterminate sentence as applied to him. Whether in any event the objection is one which the prosecution could raise or rely upon is much more doubtful. 6 Am. & Eng. Ency. Law (2d. Ed.) 1090. This statute, however, expressly provides for the imposition of the indeterminate sentence on those only who are convicted of offenses committed after the law came into effect, and for preserving "the rights under the law of all persons that are now or may be hereafter committed to the penitentiary for crimes committed on or prior to July 4, 1907." So far as this legislation introduces features tending to mitigate the severity of punishment, or to provide for parole (which no prisoner is under obligation or compulsion to accept), it is not open to any constitutional objection, even though intended to apply to all prisoners without regard to the date of their offenses. There is nothing in the language of the statute, or in the construction put upon it by the petitioner, which renders it obnoxious to the constitutional inhibition of *ex post facto* legislation.

IV. In view of our conclusions elsewhere stated it is probably unnecessary for us to dwell upon the question whether, upon a proper construction of the act providing for indeterminate sentences and for a board of parole, the latter has authority to parole any prisoner except those

sentenced under the law in its present form. But a brief

6. SAME: parole of prisoners: indeterminate sentence: statutes: construction.

reference to its terms and apparent intent is not inappropriate. Counsel for respondent justly interpret this statute (chapter 192, Laws 32d General Assembly) as an attempt to "revolutionize the system of punishment for crime in this State, and as a part of the machinery for working the new system to create a board of parole. The act is a connected whole, and should be so construed. All the sections are part of the system and refer to some feature of the general plan." But in our judgment this manner of considering the statute leads away from rather than up to the conclusion for which counsel contends. It is a matter of familiar recent history that the adoption of this new scheme of administering penal justice had been for years pressed upon the attention of the Legislature of the State as a very desirable reform. It was not intended so much as an amendment to the old system as the adoption of a new one, framed upon different plans and ideals. It was not intended to apply simply to one prison or to one class of offenders. No reason existed why the several hundred persons then in prison under the old law, and those who might yet be convicted thereunder, should be set apart as one class to whom the new law should have no manner of application, except the reason found in the constitutional restriction above referred to, which protected such persons from any increase of the punishment or penalty imposed upon them under the old law. The statute seems to have been carefully drawn with this thought in mind, and to have been made as broad, complete, and comprehensive as was practicable and avoid transgressing this provision of the fundamental law. This was accomplished by a few clauses without which the chapter is barren of any suggestion that its application was not to be as wide as the prison population, without regard to the date of offense or conviction. These clauses

are as follows: "In section nine the liability to an inde-
terminate sentence is limited to those convicted of felony
committed subsequent to July 4, 1907, and in section
nineteen the usual clause repealing all acts and parts of
acts inconsistent with the provisions of this chapter is
limited to leave in force prior statutes so far as they
relate to persons already convicted thereunder or may
thereafter be convicted for crimes committed before said
chapter should go into effect." By way of further cau-
tion it is added that: "The rights under the law of all
prisoners that are now or may be hereafter committed to
the penitentiary for crimes committed prior to July 4,
1907, are expressly preserved to them." As we have al-
ready suggested, we see no reason why we should read
into these limitations anything more than their apparent
meaning and purpose to prevent encroachment upon the
constitutional rights of prisoners whose offenses antedated
the new law. To have that effect it was not necessary
to deny the board authority to extend parole to a prisoner
whom it might believe deserving, without regard to the
date of his offense. The authority given to the board by
section 14 is "to establish rules and regulations under
which it may allow prisoners within the penitentiaries,
other than those serving life terms, to go upon parole out-
side the penitentiary buildings, inclosures and appurte-
nances, but to remain while on parole in the legal custody
of the wardens and under the control of the Board of
Parole and subject at any time to be taken back and con-
fined within the penitentiary." This authority is as broad
as could well be expressed. It is certainly comprehensive
enough to include all inmates of the prison except those
serving life terms, and we think this scope is not restricted
by the exceptions and limitations by which persons un-
der the old law are protected from increase of penalty or
punishment. Under this construction of the statute we
are constrained to hold that the action of the Board of

Parole was authorized, and that the order of the district court in disregard thereof can not be sustained.

It is therefore hereby ordered and adjudged that the petitioner be remanded to the position and place under the control of the Board of Parole from which he is now restrained by the warden, under the alleged authority of the said second *mittimus.*—*Writ sustained.*