STATE of Iowa, Appellee,

v.

Hayden Jasper WATTS, Appellant.

No. 54164.

Supreme Court of Iowa.

May 5, 1971.

Thomas C. Younggren, Keokuk, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., Robert B. Dickey, County Atty., Lee, for appellee.

MASON, Justice.

This is an appeal from judgment following a jury verdict convicting defendant Hayden Jasper Watts of violation of parole contrary to section 247.28, Code, 1966. Watts was sentenced under this statute to the state penitentiary for a period not to exceed five years, the sentence to commence at the expiration of any existing sentence then being served by him.

For a better understanding of the questions presented we recite some preliminary background.

March 21, 1968 Watts had been committed to the state penitentiary on a larceny conviction. September 11, 1969 he was paroled by the board of parole "upon the conditions stipulated in a certain parole agreement" signed by him. November 11, his parole was revoked and defendant was returned to the penitentiary to continue serving the sentence originally imposed on the larceny conviction.

October 8, 1969 Watts was arraigned and entered a plea of guilty to the crime of operating a motor vehicle while under the influence of an alcoholic beverage, an indictable misdemeanor. Section 321.281, Code, 1966. October 30 he was sentenced to pay a $300 fine and committed to the county jail for a period of six months. The jail sentence was suspended and probation granted under the supervision of the Lee county sheriff.

December 31, 1969 Watts was charged by county attorney's information with violating the provisions of his board parole on the 1968 larceny conviction in that he had been convicted upon his plea of guilty of operating a motor vehicle while under the influence of an alcoholic beverage.

The information was amended charging defendant with further violation of his parole by being involved in two breaking and enterings in Lee county and by carrying and using a gun on the occasion. This incident is alleged to have occurred October 26.

After defendant's motion to suppress evidence relating to his plea of guilty to the charge of operating a motor vehicle while under the influence of an alcoholic beverage and to the sentence imposed was overruled, trial on the parole violation charged was commenced.

At the close of the State's case defendant moved for a directed verdict and dismissal of the information challenging the constitutionality of section 247.28 as being a denial of due process. The motion was overruled.

Defendant offered no evidence and the matter was submitted to the jury. The issue of constitutionality of the statute was raised again in defendant's motion in arrest of judgment and again overruled.

Defendant contends the trial court erred in overruling his motion to suppress evidence relating to his indictable misdemeanor conviction for the reason the court in that case while informing him of his constitutional right under Amendment 6 to the federal constitution to have an attorney represent him did not properly advise him that if he were indigent a lawyer would be appointed to represent him. The court also failed to advise him of his right under Amendment 5 to remain silent when called upon by the court to plead to the charge and failed to inform him such plea might be later used against him. Defendant argues therefore he did not make an intelligent and understanding waiver of these rights.

Furthermore, defendant contends section 247.28 is unconstitutional because the legislature has delegated to the state parole board the power to make violation of the rules and regulations and conditions of the parole board a felony crime in Iowa.

I. We consider first defendant's contention that the delegation of power by the legislature to the parole board renders section 247.28 unconstitutional.

The section under attack provides:

"Violation of board parole. Whoever, while on parole, shall violate any condition of his parole, or any rule or regulation of the board granting the parole, shall be deemed guilty of a felony, and shall be punished by imprisonment in the institution from which he had been paroled, for a term of not more than five years, his sentence under such conviction to take effect upon the completion of his previous sentence."

Section 247.6, a related statute, provides in part:

"Rules. Said board shall have power to establish rules and conditions under which paroles may be granted.

" *   *   *."

Generally, the legislature can delegate to an administrative body the right to make rules and regulations for the purpose of carrying out the objectives of the statute. Thus, it can authorize parole boards to determine how, when and where a prisoner shall serve his sentence, the length of time within the statutory maximum he shall serve and under what terms. State v. Kulish, 260 Iowa 138, 145, 148 N.W.2d 428, 433. In making this determination parole boards may set up rules and regulations which are constitutionally valid. Kirkpatrick v. Hollowell, 197 Iowa 927, 196 N.W. 91, the opinion amended on other grounds in 197 Iowa 927, 198 N.W. 81; Ware v. Sanders, 146 Iowa 233, 124 N.W. 1081; 16 C.J.S. Constitutional Law § 138(7).

However, this court has not determined whether the legislative enactment fixing a maximum term of five years imprisonment for breach of any regulation as determined by the parole board in their sole discretion constitutes an unconstitutional delegation of power.

Before considering defendant's contention we state "some thoroughly established principles which must be followed in all cases where questions of constitutionality are involved."

They are summarized in Danner v. Hass, 257 Iowa 654, 661, 134 N.W.2d 534, 539 in this manner: "all presumptions are indulged in favor of constitutionality; one who attacks a statute, alleging unconstitutionality, must prove its invalidity beyond a reasonable doubt; that a law may work hardship does not render it unconstitutional; if any reasonable basis may be conveived which supports the statute, it will be upheld, and the challenger must negative all possible bases; the courts are not concerned with the wisdom, justice, policy, or expediency of a statute; and we will adopt a liberal interpretation of the constitution in favor of the constitutionality of legislation."

In State v. Steenhoek, 182 N.W.2d 377, 380 (Iowa 1970) we said, "Before a court

may be justified in holding a statute unconstitutional as a delegation of legislative power, it must clearly appear that the power involved is purely legislative in nature —that is, one appertaining exclusively to the legislative department. Montana-Dakota Utilities Co. v. Johanneson, 153 N.W. 2d 414, 421, (N.D.1967); Annot., 79 L.Ed. 474, 484–487 and 16 Am.Jur.2d, Constitutional Law, Section 242 and cases cited in support of the text.

"Legislative power is defined in Am. Jur.2d, supra, in this manner:

"'Purely legislative power, which can never be delegated has been described as the authority to make a complete law— complete as to time when it shall take effect and as to whom it shall be applicable —and to determine the expediency of its enactment.

"'* * *. While a legislative body cannot abdicate its general lawmaking powers it may authorize others to do things which it might properly do, but which it cannot conveniently or advantageously perform.'"

■ Only the legislature has the power to create and define crime, the only limitation being that such enactment shall not infringe on constitutional rights and privileges. This exclusive legislative function may not be delegated to any other body or agency without adequate guidelines. Casey v. People, 139 Colo. 89, 336 P.2d 308, 309; Greenwald v. State, 221 Md. 235, 155 A.2d 894, 897, appeal dismissed, 363 U.S. 719, 80 S.Ct. 1596, 4 L.Ed.2d 1521; Lapinski v. State, 84 Nev. 611, 446 P.2d 645, 646; Taylor v. Commonwealth, 187 Va. 214, 46 S.E.2d 384, 387; 16 C.J.S. Constitutional Law § 138 a; 1 Am.Jur.2d, Administrative Law, section 127.

■ The essentials of the "legislative function" are the determination of legislative policy and its formulation and promulgation as a defined and binding rule of conduct. These essentials are preserved when the legislature lays down the rule

that acts contrary to regulations authorized under a statute containing sufficient standards shall entail penal sanctions. Yakus v. United States, 321 U.S. 414, 424–425, 64 S.Ct. 660, 667, 88 L.Ed. 834, 848.

There can be no doubt that the legislature may render the violation of an agency's rules a criminal offense, the only question is whether the statute granting authority to the agency is fitted with sufficient standards.

In Pierce v. Doolittle, 130 Iowa 333, 336, 106 N.W. 751, 752, this court said:

"We think it clear that the Legislature may provide for the punishment of acts in resistance to, or violation of, the authority conferred upon such subordinate tribunal or board. 'When these boards duly adopt rules or by-laws by virtue of legislative authority such rules and by-laws, within the respective jurisdictions, have the force and effect of a law of the Legislature; and like an ordinance or by-law of a municipal corporation they may be said to be in force by authority of the state.'" Among other authorities supporting this principle are State v. Phelps, 12 Ariz.App. 83, 87, 467 P. 2d 923, 927; Lane v. Holderman, 40 N.J. Super. 329, 123 A.2d 56, 64, citing United States v. Grimaud, 220 U.S. 506, 516–517, 31 S.Ct. 480, 482–483, 55 L.Ed. 563, 567–568; State v. Allen, 77 N.M. 433, 423 P.2d 867, 868. The Lane case was affirmed in 23 N.J. 304, 129 A.2d 8.

The Supreme Court has said courts administering the criminal law cannot apply sanctions for violation of the mandate of an agency unless that agency's authority is clear and has been conferred in accordance with the law. Gojack v. United States, 384 U.S. 702, 714, 86 S.Ct. 1689, 1697, 16 L. Ed.2d 870, 878–879.

■ Section 247.28 is penal in nature and must be strictly construed and not broadened beyond the clear and express intent of the legislature. In support see State v. Phelps, 12 Ariz.App. 83, 467 P.2d 923, 927.

Defendant contends chapter 247 does not contain adequate guidelines or sufficient standards to meet the requirements articulated supra for a valid delegation of power. In rejecting a similar contention we said in State v. Steenhoek, 182 N.W.2d at 381: "* * * In Danner v. Hass, supra, 257 Iowa at 662–664, 134 N.W.2d at 540–541 this court referred to numerous instances where great leeway was allowed the legislature in setting forth guidelines.

"In Zilm v. Zoning Board of Adjustment, 260 Iowa 787, 794, 150 N.W.2d 606, 610 we observed that the trend of modern decisions is toward greater liberality in the setting of standards and to require less exactness in them in legislative enactments. In Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d 311, 316–317 (Iowa 1968) we quoted with approval this statement from Gilman v. City of Newark, 73 N.J.Super. 562, 180 A.2d 365, 384, 'The mere fact that standards * * * are general rather than specific does not militate against their acceptance and validity. The exigencies of modern government have increasingly dictated the use of general rather than detailed standards in regulatory enactments. * * *.'

"Later in the Elk Run opinion we noted that ' * * * the important consideration is not whether the statute delegating the power expresses *standards* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action.' (emphasis in the original).

"Our own decisions confirm the philosophy that the standards set up need not be exact or precise if general policy is defined. Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d at 316."

We agree with the numerous cases which state the line between what is constitutional and an unconstitutional delegation of authority and power is dim and must, in many instances, be determined on a case-to-case basis. United States v. Grimaud, 220 U.S. 506, 516–517, 31 S.Ct. 480, 55 L.Ed. 563, 567–568; State v. Phelps, 12 Ariz.App. 83, 467 P.2d 923, 927.

What is now chapter 247 was enacted as chapter 192, Acts of the Thirty-second General Assembly and described as an act to revise the law relating to the sentence and commitment of persons convicted of crime, and providing for a system of reform and parole and to create the necessary officers therefor, defining their powers and duties. Over the years it has been amended and revised in many respects.

This court has said the apparent intent of the statute was an attempt to "revolutionize the system of punishment for crime in this state, and as a part of the machinery for working the new system to create a board of parole. * * * It was not intended so much as an amendment to the old system as the adoption of a new one, framed upon different plans and ideals." Ware v. Sanders, 146 Iowa at 248, 124 N. W. at 1086.

Section 247.28 of the present Code first appeared as chapter 10, Acts of the Thirty-ninth General Assembly. It was an amendment to section 5718–a18 in the 1913 Supplement to the Code.

Section 247.5, Code, 1966, appeared as section 14, Acts of the Thirty-second General Assembly. It declares the legislative purpose in enacting chapter 247. This purpose was to introduce features tending to mitigate the severity of punishment, to effect the rehabilitation of those convicted of crime and place a premium upon their good behavior after sentencing.

The portion of section 247.6 quoted, supra, was a part of section 14, Acts of the Thirty-second General Assembly.

Later in Ware v. Sanders, supra, 146 Iowa at 249, 124 N.W. at 1087, this court construed section 14 as giving the board authority "to establish rules and regulations under which it may allow prisoners within the penitentiaries other than those serving life terms to go upon parole outside the penitentiary buildings, inclosures

and appurtenances, but to remain while on parole in the legal custody of the wardens and under the control of the Board of Parole and subject at any time to be taken back and confined within the penitentiary."

The Ware case was decided in 1910. In the meantime the legislature has not taken any steps to indicate the quoted statement did not accurately set forth the intended legislative grant of power to the board of parole.

In view of the fact the general policy for enactment of the chapter was, as stated, to effect the rehabilitation of those convicted of crime and place a premium upon their good behavior after sentencing, the exercise of the power delegated in 247.6 is reasonably required and suited to attain that purpose. Pierce v. Inc. Town of La Porte City, 259 Iowa 1120, 1124–1125, 146 N.W.2d 907, 909–910.

Procedure established for the exercise of the power furnishes adequate safeguards to those who are affected by the administrative action, as stated an important consideration in determining delegation of power. See Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d at 317.

The board of parole in the exercise of the power granted conducts no judicial hearings nor enters any judicial findings of fact when a violation is charged under 247.28. The question of a parolee's criminal responsibility for the alleged violation of its rules and regulations and conditions of parole are determined by a court of law in a constitutional manner. The right to counsel, to a jury trial and to appeal are afforded a defendant charged.

■ We conclude the guidelines and standards are adequate and sufficient. Therefore, section 247.6 is a proper delegation of power.

■ Defendant maintains in support of his constitutional objection to 247.28 the legislature has delegated not only the power to make rules and regulations but also the power to declare their violation a felony. We do not agree.

The board of parole neither defines or creates a crime nor determines the punishment. The legislature itself prescribed that a violation of any rule or regulation or condition of a parole of the administrative agency granting the parole was a felony and fixed the maximum penalty.

Defendant's attack on the constitutionality of section 247.28 cannot be sustained.

■ In answer to defendant's contention that he was denied due process we agree with the trial court's conclusion in its ruling on defendant's motion in arrest of judgment where it stated, "the very rights to which defendant contends he is entitled have been granted to him. The Board of Parole did not establish his guilt; it only accused him of violating the terms of his parole thus causing the prosecution under the statute. A complete and formal charge was filed; he exercised his right to counsel and competent counsel was appointed; he was arraigned and answered the charge; he had a public trial before a jury; he had full opportunity to defend against or make any response to the charge that he desired. Most certainly he had had full protection of due process in the inquiry as to whether the alleged violations have been proven and is subject to an additional penalty as provided by statute."

II. In his remaining assignments of error defendant contends the trial court erred in his trial on the charge of violating his parole by overruling his pretrial motion to suppress evidence and testimony relating to his previous conviction on his plea of guilty to the charge of operating a motor vehicle while under the influence of an alcoholic beverage. During trial objections were made to the same evidence sought to be suppressed.

In his second assigned error defendant contends the court did not advise him of his right under Amendment 5 to the federal constitution to remain silent when called

upon to answer at arraignment. He maintains this fact renders the later admission of the guilty plea and testimony relating thereto inadmissible on the charge of violating his parole.

Defendant cites no decision which indicates a defendant must be warned that a plea of guilty resulting in his conviction may be taken into account if, at a later date, he is convicted of other offenses and the fact of his prior conviction is offered as a material element to sustain the later charge which may involve a more severe penalty.

However, in Wessling v. Bennett, 290 F.Supp. 511, 517, the district court for the Northern District of Iowa, Central Division, said:

"A state does not have to give notice in advance of trial on the primary charge of its intention to invoke a recidivist statute 'even where the former conviction is known.' Graham v. State of West Virginia, supra, 224 U.S. [616] at p. 629, 32 S.Ct. [583] at p. 588, [56 L.Ed. 917]." On appeal the case was affirmed, Wessling v. Bennett, 410 F.2d 205 (8 Cir.), the court holding defendant had no federal constitutional right to be informed of the habitual criminal charges prior to his conviction on the primary charge.

In State v. Sisco, 169 N.W.2d 542, 547–548 (Iowa 1969), this court adopted certain American Bar Association Minimum Standards for Criminal Justice quoted in that opinion. Among these was Standard 1.4 which provides in pertinent part:

"1.4 Defendant to be advised by court.

"The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

"(a) * * *;

"(b) * * *;

"(c) informing him:

"(i) * * *;

"(ii) * * *;

"(iii) when the offense charged is one for which a different or additional punishment is authorized by reason of the fact that the defendant has previously been convicted of an offense, that this fact may be established after his plea in the present action if he has been previously convicted, thereby subjecting him to such different or additional punishment."

This comment of the committee bears on the quoted portion of the standard:

"It must be emphasized that this provision does *not* require a warning to the defendant that his present conviction may be taken into account if, at a later date, he is convicted of other offenses and then dealt with as a repeater under multiple offender laws. Likewise, the judge is not required to speculate concerning the possible future application of the multiple offender laws of other jurisdictions because of the present conviction. Rather, this part of the standard applies only when it is possible, assuming past convictions, that the conviction following defendant's present plea could result in the prompt imposition of additional punishment by this jurisdiction. The standard applies whether this additional punishment would result by virtue of a separate charge under a multiple offender law or by virtue of a special penalty provision applicable to the offense now charged." (emphasis in the original).

A complete record was made of the proceedings at the plea stage and later at the sentencing stage on the misdemeanor charge. The trial court is to be commended for the preservation of this excellent record.

Although the court never actually advised defendant that his conviction on the primary charge could be used as a basis for a charge of parole violation, the fact of his being on parole was a matter of discussion between the court, defendant and the prosecuting attorney. Both at the plea stage and at the sentencing stage defendant volunteered the information he was on

parole and had talked to his parole officer about the matter. He had also admitted conviction of two previous felonies.

At the sentencing stage when the matter of defendant being on parole was again brought up, the court advised defendant that if it were in the parole agent's position it would recommend that defendant's parole be revoked and he be sent back to the penitentiary. This is not a case for the application of the standard quoted, supra.

■ Defendant's constitutional right against self-incrimination was not violated by the court's failure to advise him his conviction upon a plea of guilty to the indictable misdemeanor charge could be used as a basis for charging him with violating his parole granted on the earlier larceny conviction. Defendant's contention urged under this assignment is without merit.

III. Defendant's remaining assignment presents the question of his waiver of the right to counsel at the plea stage on the misdemeanor charge.

This is not the case where we are asked to presume waiver from a silent record. Here the trial court meticulously followed the guidelines set forth in State v. Sisco, Iowa, 169 N.W.2d 542, 547–548.

As stated, the trial court advised defendant before accepting his plea of guilty he had a right to have an attorney represent him. Defendant's contention is based on the court's failure to advise him that if he were indigent one would be appointed to represent him.

■ An indigent defendant charged with an indictable misdemeanor is entitled to appointment of counsel upon request under section 775.4. "This section makes it a matter of right for an indigent defendant

to have counsel assigned to him in any case where he appears for arraignment without counsel." Wright v. Denato, 178 N.W.2d 339, 341–342 (Iowa 1970). However, this is a right that may be waived by defendant.

The record discloses that when the trial court asked Watts if he had an attorney or desired opportunity to confer with an attorney he replied, "No Sir." Upon further inquiry Watts was asked if he knew he would be entitled to be represented by counsel if he desired and he replied, "Yes Sir." When asked if he wanted to waive that right he again replied, "Yes Sir."

The formal requisites for a guilty plea in this state are set forth in State v. Lampson, 260 Iowa 806, 815–816, 149 N.W.2d 116, 121 and will not be repeated here.

■ Our independent examination of the record made at the plea stage and at the sentencing stage convinces us defendant's plea to misdemeanor charge was knowingly and voluntarily entered.

A guilty plea understandingly and voluntarily made waives all nonjurisdictional defects in prior proceedings against accused including lack of counsel. Howard v. United States, 420 F.2d 478, 479–480 (5 Cir.).

Defendant's right to counsel was competently and intelligently waived as shown by the record. His plea of guilty was therefore admissible at defendant's trial on the charge of parole violation.

This assignment cannot be sustained.

The case is

Affirmed.

All Justices concur except REYNOLDSON, J., who takes no part.