**IN THE COURT OF APPEALS OF IOWA**

No. 13-0804
Filed June 25, 2014

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**DOMINICK RONALD MARCOTT,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Johnson County, Douglas S. Russell (motion to dismiss) and Stephen B. Jackson (trial), Judges.


       Dominick Marcott appeals his conviction for possession of contraband while confined in a correctional institution. **CONVICTION REVERSED AND REMANDED FOR DISMISSAL; PROBATION REVOCATION REVERSED AND REMANDED; JUDGMENTS AND SENTENCES VACATED.**


       Lars G. Anderson of Holland & Anderson L.L.P., Iowa City, for appellant.

       Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Janet M. Lyness, County Attorney, and Elizabeth Beglin, Assistant County Attorney, for appellee.


       Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

Dominick Ronald Marcott appeals his conviction for possession of contraband while confined in a correctional institution. *See* Iowa Code § 719.7(3)(c) (2011). Marcott claims his valid prescription for methylphenidate shows his possession was with "authority of law." He also claims the policies and rules of correctional institutions are not "laws."

We conclude section 719.7(3)(c), creating an offense for possession "not authorized by law," does not, by its terms, include a resident in a correctional institution with a valid, lawful prescription. Accordingly, we reverse Marcott's conviction and remand for dismissal. We also reverse, without prejudice, the court's order revoking probation as it was based solely on Marcott's possession-of-contraband conviction, thus, allowing the State, if it wishes, to proceed with a new probation revocation hearing consistent with this opinion. Accordingly, we vacate the judgments and sentences resulting from the probation revocation.

## I. Background Facts and Proceedings

In September 2011 the district court placed Marcott on supervised probation to the Sixth Judicial District Department of Corrections (Sixth DOC). As a condition of his probation, Marcott was required to reside at the Hope House, a residential-services facility operated by the Iowa Department of Corrections and the Sixth DOC.

The Sixth DOC created a "medication control policy," the purpose of which is to "establish process and procedure for the handling and administrating of

prescription medications to [ ] in Community Based Corrections [(CBC)] facilities."

The policy states:

> **POLICY**: Trained staff will secure, control and audit scheduled controlled substance medications. Over the counter medications and prescribed medications will be possessed by [ ], unless there is reason to believe the [ ] may abuse the medication.
> **APPLICABILITY**: This policy applies to all CBC staff[1] and will be maintained current by the Residential Manager or designee.
> **DEFINITION**: . . . Scheduled Controlled Substance—Medication prescribed by a doctor and filled by a pharmacy. These medications possess an increased risk of abuse or addiction.

Under the policy, all "medications brought into the facility by [ ] . . . must be shown to staff for proper authorization and storage if appropriate."

Hope House's residential handbook provides "pills/medication in unlabeled or incorrectly labeled containers" are "not allowed in the facility." The handbook also states:

> Residents are required to notify staff whenever they enter the facility with any type of medication (prescription and non-prescription). Staff will secure medications which present a potential for misuse, and make them available to the resident according to dosage instructions. Medications which residents are allowed to keep must be secured in their cabinet at all times.
> All medications brought into the facility must be in the original container allowing staff to properly identify the medication. Medications which are not labeled will not be allowed in the facility. All prescribed medications . . . <u>must</u> be accompanied with a travel bottle . . . . Failure to provide a travel bottle . . . may result in

---

[1] We note the Sixth DOC medication control policy, by its terms, applies to "all CBC staff." This applicability is reinforced by sections headed "Training Requirements for Staff" and "Assignment of Staff Medication Allotter." This applicability is also reinforced by the procedures, for example: (1) "Staff will have the [ ] open his or her mouth to ensure the medication has been swallowed"; (2) "Scheduled controlled substances shall be counted by staff upon receipt of new medications and are to be locked and secured at all times"; (3) "Staff will document the decision to let the [ ] keep the medication"; (4) "Only authorized and trained staff shall have access to controlled medications"; and (5) "Written directions shall be obtained by staff from the appropriate physician/agency prior to administering any scheduled controlled substance."

disciplinary action . . . . Meds will be available to residents at specific times. Med times are posted at the control center.

On September 23, 2011, Marcott entered Hope House and completed the intake process. Marcott signed a form listing thirty potential "Rule Violations," including "Possession of Drugs/Intoxicants" and "Abuse of Medication." The form stated violations "may be considered as major rule violations resulting in the loss of earned time."

Another form Marcott signed during intake stated offenders in violation of "Work Release/OWI regulations" could be subject to the following disciplinary measures: "Recommend forfeiture of earned time to [ALJ]"; "Recommend suspension of Honor Contract to [ALJ]"; and "Referral to prosecuting authority for violation of the law."

Finally, the Hope House Information Sheet for Marcott states he suffered from "ADHD," lists Dr. Smith, and lists "methylphenidate." We note this drug is commonly referred to as Ritalin. But at no point from the September 2011 intake process to November 30, 2011, did Marcott provide Hope House staff with any methylphenidate in his possession in a properly-labelled prescription bottle, with a valid prescription, or with a completed residential-correctional-facility medication form.

On November 30, 2011, Hope House staff observed Marcott with a plastic baggie and pills. Testing showed the pills contained methylphenidate. It is undisputed Marcott told the Hope House staff he had a valid prescription for the drug on that day.

In March 2013, after several amendments to the trial information, the State alleged Marcott violated Iowa Code sections 124.206(4)(d) (defining methylphenidate as a controlled substance), 719.7(1)(a) (defining contraband to include a "controlled substance"), 719.7(3)(c) (defining offense of "possessing contraband" in an institution managed by the IDOC); 719.7(4)(b) (stating violation of 719.7(3)(c) is a class "D" felony), and 902.8 (as a habitual offender). Marcott filed a motion to dismiss based on section 719.7(3)(c):

> 3. A person commits the offense of possessing contraband if the person, not *authorized by law*, does any of the following:
> . . . .
> c. Knowingly makes, obtains, or possesses contraband while confined in a detention facility, jail, correctional institution, or institution under the management of the department of corrections.

(Emphasis added.)

Marcott claimed the fact he had a valid prescription for the drug showed his possession was, in fact, "authorized by law" and his "valid prescription provides a complete defense." Second, after noting "authorized by law" is not defined, Marcott claimed the statute failed to provide "clear guidance as to whether a person is barred from possessing [the drug] in a correctional residential facility when the person has a valid prescription." Thus, he claims section 719.7(3)(c) is "unconstitutionally vague as applied" to his conduct.

After a hearing, the district court denied the motion to dismiss. The court ruled Marcott, as a part of intake, "was advised of and received the Hope House rules, which included possession of drugs as a violation of the rules," and Marcott "acknowledged receiving the medical procedures rules and the explanation of rules and the medical plan/medication policy." The court concluded Marcott's

"valid prescription is no defense to the charge . . . of possessing the medication within a correctional facility.[2] Having a valid prescription for a controlled substance does not 'authorize by law' its possession in a correctional facility." Second, the district court concluded section 719.7(3)(c) is not unconstitutionally vague as applied.[3]

During the April 2013 jury trial, defense counsel moved for judgment of acquittal and claimed there was insufficient evidence to establish Marcott was not authorized by law to possess the drug at Hope House. The court denied the motion, and the jury found Marcott guilty of possession of contraband while confined in a correctional institution.

In May 2013 the court conducted a joint sentencing and probation-revocation hearing. The court sentenced Marcott to a term not to exceed fifteen years in prison on the contraband offense, as a habitual offender. The court suspended this sentence and placed Marcott on probation. The court then turned to the probation- revocation hearing for three Johnson County cases.[4]

---

[2] The court stated a valid prescription could be a defense to possession outside a correctional facility for violations of Iowa Code sections 124.206(4)(d) and 124.401(5).
[3] The district court explained:

> [Marcott] was made aware that controlled substances and medications were not allowed to be in the possession of a resident at Hope House. [Marcott] did not comply with the Hope House regulations by completing medication forms, or surrendering his medications to the staff as the rules required. Because of all of the rules and regulations of which [Marcott] was advised upon his intake, the Court finds that there was no vagueness in the way the rules would be applied, nor would there be any vagueness in how the law concerning controlled substances in a correctional facility would apply to [Marcott]. Without knowing the language of Chapter 719, [Marcott] was surely made aware that controlled substances were not allowed in the facility.

[4] The Johnson County case numbers are AGCR091550, AGCR092818, and AGCR094627.

Based solely on the April jury verdict, Marcott stipulated to violating his probation in the Johnson County cases. The court stated, "just to be clear, it's the jury verdict finding Mr. Marcott guilty of [possession of contraband] that occurred during his probation in each of these three files that provides the basis for the violation." The court revoked Marcott's previously-granted probations and sentenced him to two-year indeterminate terms on each of the three aggravated misdemeanors, the sentences to run consecutively "as indicated in the prior sentencing order."

This appeal followed.

## II. Standards of Review

A motion for judgment of acquittal challenges the sufficiency of the evidence, and we review for correction of errors at law. *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005). To the extent Marcott's challenge requires the interpretation of Iowa Code section 719.7(3)(c), we likewise review for correction of errors at law. *State v. Freeman*, 705 N.W.2d 286, 287 (Iowa 2005). In interpreting a criminal statute, "provisions establishing the scope of criminal liability are to be strictly construed with doubts resolved therein in favor of the accused." *State v. Hearn*, 797 N.W.2d 577, 583 (Iowa 2011).

We review constitutional challenges de novo. *State v. Shanahan*, 712 N.W.2d 121, 131 (Iowa 2006). When considering Marcott's challenge to the validity of Iowa Code section 719.7(3)(c), "[w]e presume the statute is constitutional." *State v. Robinson*, 618 N.W.2d 306, 314 (Iowa 2000). Thus,

Marcott must demonstrate the "unconstitutional vagueness of [the] criminal statute" beyond a reasonable doubt. *See id.*

### III. Analysis

**A. "Authorized by Law."** Marcott challenges the sufficiency of the evidence on the following element contained in the jury instructions: "The Defendant was not authorized by law to possess methylphenidate within the correctional institution." Marcott claims he was "authorized by law" to possess methylphenidate by virtue of his valid prescription and points to three Iowa Code sections for support.

First, Iowa Code section 124.302(3)(c) states the "following persons . . . may lawfully possess controlled substances under this chapter . . . a person in possession of any controlled substance pursuant to a lawful order of a practitioner." Second, Iowa Code section 124.401(5) states: "It is unlawful for any person knowingly . . . to possess a controlled substance unless such substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice." Third, Marcott notes Iowa Code section 155A.21(1) makes possession of a prescription drug a misdemeanor unless the drug was "lawfully dispensed."

Citing to an unpublished opinion of this court interpreting section 719.7, Marcott claims the rules he admittedly violated do not constitute "law" and do not make his possession of the contraband a felonious criminal act. *See State v. Palmer*, No. 09-0994, 2010 WL 2383948, at *3 (Iowa Ct. App. June 16, 2010).

The State responds that it is significant that section 719.7—possessing contraband—includes as contraband some items that ordinarily would not be illegal to possess—rope, ladder components, and key or key pattern. *See* Iowa Code § 719.7(1)(c). The State claims "[t]herefore, a resident is not 'authorized by law' to possess contraband merely because it would be legal to do so outside of the institution. There must be some additional, affirmative authority to possess the contraband in the institution." The State claims a prescription does not provide the additional authority because controlled substances pose a threat to inmate safety and institutional order whether or not the drug had been obtained by a valid prescription.

We are not persuaded. Marcott was charged under subsection 719.7(1)(a), not the State-referenced subsection .7(1)(c)—which specifically states the legal items (rope, etc.) are contraband only when "designed or intended to facilitate escape of an inmate." *Id.* Similarly, Marcott was not charged with a class "C" felony under subsection .7(1)(b)—which specifically identifies "a knife of any length" or "other material fashioned in such a manner as to be capable of inflicting death or injury." *See id.* § 719.7(1)(c). We note the legislature did not include any such limitation ("facilitate escape" or "capable of inflicting death or injury") in subsection .7(1)(a)'s definition of contraband—which states in its entirety: "A controlled substance or a simulated or counterfeit controlled substance, hypodermic syringe, or intoxicating beverage." *See id.* § 719.7(1)(a).

Additionally, we find *Palmer* persuasive. At issue was defendant Palmer's claim an ink pen is not contraband under Iowa Code section 719.7. *Palmer*, 2010 WL 2383948, at *2. The State claimed the ink pen was contraband because the Polk County jail rules defined it as contraband. *Id.* at *2 (noting a violation of the jail rules could result in the suspension of Palmer's privileges). The State supported its "jail rules can define contraband" argument by quoting Iowa Code section 719.7(5):

> Nothing in this section is intended to limit the authority of the administrator of any . . . detention facility, jail, correctional institution, or institution under the management of the department of corrections to prescribe or enforce rules concerning the definition of contraband, and the transportation, making, or possession of substances, devices, instruments, materials, or other items.

The *Palmer* court "declined the State's invitation to rest our ruling on the Polk County jail rules regarding contraband under section 719.7(5)" and concluded "defining the scope of contraband for purposes of felony crimes to include a sheriff's jail rules" would impermissibly delegate "the Iowa legislature's function separately to the sheriff of each county." *Id.* at *3 (quoting *State v. Watts*, 186 N.W.2d 611, 614 (Iowa 1971) (ruling "[o]nly the legislature has the power to create and define crime" and this "exclusive legislative function may not be delegated to any other body or agency without adequate guidelines")). The *Palmer* court explained:

> The language in section 719.7 does not suggest any . . . delegation of authority by the legislature, nor are there any clear guidelines provided. More importantly, each sheriff and other administrators of juvenile and correctional facilities defining contraband by local facility rule could result in over a hundred different lists of contraband items. Thus, what might constitute a D felony in one

> county may not be a crime in another county based upon the local definitions and lists of contraband.

*Id.* at \*3 (ruling "contraband for a 'D' felony must fall within the types of items listed in section 719.7(1)(a) or (c)" and remanding to provide the State with an opportunity to show "the ink pen was an instrument 'designed to facilitate escape'").

Turning to Marcott's alleged offense, the clear and unambiguous language of Iowa Code section 719.7(3) defines the felony "offense of possessing contraband if the person, 'not authorized by law'" knowingly possesses the contraband in an "institution under the management" of the IDOC. As in *Palmer*, we conclude the correctional policies and rules Marcott violated are rules, not laws. *See id.* We recognize agency rules are ordinarily given the force and effect of law if they are reasonable and consistent with legislative enactments. *Wallace v. Iowa State Bd. of Educ.*, 770 N.W.2d 344, 348 (Iowa 2009). While a rule violation may be punished by a correctional institution, in the circumstances of this case, Marcott's rule violation is not a criminal act. *See Watts*, 186 N.W.2d at 614 (stating only the legislature has the power to create and define a crime). Here, the State seeks a statutory interpretation that would have this court write in "not authorized by law *or by rule*." We decline to write words into the statute. *See State v. Nicoletto*, 845 N.W.2d 421, 426-27 (Iowa 2014) (stating the role of the court is to apply the statute as written); *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995) (stating "[p]recise unambiguous language will be given its plain and rational meaning in light of the subject matter" and "the express mention of one thing implies the exclusion of others not so mentioned"); *see also Jahnke v.*

*City of Des Moines*, 191 N.W.2d 780, 787 (Iowa 1971) ("We assume the legislature knew the state of the law and prior judicial interpretations of similar statutory provisions. We assume, too, its use of terms was in the accepted judicially-established context unless there is clear evidence to the contrary.").

We conclude Iowa Code section 719.7(3), in conjunction with Iowa Code sections 124.302(3)(c), 124.401.(5), and 155A.21(1), does not criminalize possession, pursuant to a valid prescription, of a controlled substance within Hope House. Accordingly, we reverse the judgment and sentence for possession of contraband while confined in a correctional institution and remand for dismissal of the case.[5]

**B**. **Probation Revocation.** In this appeal, Marcott requests we vacate the court's order revoking his probation in the three Johnson County cases. Today we reversed his possession-of-contraband conviction and remanded for dismissal.

"We normally look to postconviction procedure to provide the means for testing revocation of probation." *State v. Darrin*, 325 N.W.2d 110, 112 (1982). However, here the court's imposition of the Johnson County convictions was based solely on the possession-of-contraband conviction and was made during a joint sentencing and probation-revocation hearing. *See id*. at 112 (recognizing alternative processes in some circumstances); *State v. Hughes*, 200 N.W.2d 559, 563 (Iowa 1972) (distinguishing probation revocation based on a subsequent conviction from revocation based on other grounds).

---

[5] Due to our resolution of this issue, we need not address Marcott's constitutional claim.

The foundation employed by the State for revocation of Marcott's probation in the Johnson County cases is gone—no conviction for possession of contraband exists. *See State v. Jones*, 247 N.W.2d 735, 736 (Iowa 1976) (reversing probation revocation). We, therefore, reverse the probation revocation and vacate the judgments and sentences imposed by the court following its revocation of probation in all three Johnson County cases—without prejudice to another hearing in district court on the State's application.

**CONVICTION REVERSED AND REMANDED FOR DISMISSAL; PROBATION REVOCATION REVERSED AND REMANDED; JUDGEMENTS AND SENTENCES VACATED.**