# Richmond

LOTTIE E. TAYLOR v. COMMONWEALTH OF VIRGINIA.

March 1, 1948.

Record No. 3267.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*James H. Raby*, for the plaintiff in error.

*Harvey B. Apperson, Attorney General*, for the Commonwealth.

*Martin A. Martin, Oliver W. Hill* and *Spottswood W. Robinson, III, amicus curiae.*

SPRATLEY, J., delivered the opinion of the court.

The plaintiff in error, Mrs. Lottie E. Taylor, a colored woman, upon an appeal from the judgment of a trial justice, was tried in the Circuit Court of Fairfax county on a warrant charging that on the 12th day of September, 1946, she "did unlawfully cause an unnecessary disturbance in an omnibus or public conveyance by failing to move to another seat when lawfully requested so to move by the operator thereof, said failure being in violation of section 4533a of

the Code of Virginia." She pleaded not guilty and waived trial by jury. With the consent of the Commonwealth, the case was then heard by the trial judge. She was found guilty and sentenced to pay a fine of five dollars and costs.

The facts are without material dispute.

On September 12, 1946, Mrs. Taylor purchased a ticket from Virginia Stage Lines, Inc., a common carrier by motor vehicle engaged in operating a bus line from Washington, D. C., to points in Virginia. Her ticket entitled her to be transported from Washington, D. C., to Brightwood, in Madison county, Virginia. She boarded a bus of the carrier, and took the fifth seat from the front of the vehicle. The bus driver immediately requested her to move to a seat in the rear of the bus because, under the rules and regulations of his company, colored persons were required to sit in the rear and white persons in the front. She refused to move. He then told her that while the regulations were not enforced in Washington, D. C., she would have to move when she arrived in Virginia. After she arrived in Virginia, he several times requested her to move. He said he also read to her the regulations of the carrier and called her attention to a copy of them posted prominently at the inside front of the bus. She still refused to change her seat.

The rules and regulations of the carrier read as follows:

## "NOTICE TO PASSENGERS

### Rules and Regulations

"To enable this Company to perform the duties it has undertaken, to protect its property and business, to preserve order and decorum, and for the safety, convenience, and comfort of its passengers, it hereby publishes the following rules and regulations:

"1. Passengers shall not interfere with bus drivers, by conversation or otherwise.

"2. The Company reserves full control and discretion as to the seating of passengers, reserves the right to change such seating at any time during a trip, and reserves the right to

transfer passengers from one vehicle to another whenever necessary.

"3. White passengers will occupy space nearest the front of the bus, and colored passengers will occupy space nearest the rear of the bus.

"4. The Company reserves the right to refuse to transport a person under the influence of intoxicating liquors, or drugs, or who is incapable of taking care of himself or herself, or whose conduct is such, or is likely to become such, as to make him or her objectionable to other passengers.

"5. Any passenger who shall engage in any disorderly conduct on a bus, or who shall interfere with the safety or comfort of other passengers, or who shall interfere with the operation of a bus, or who shall fail or refuse to comply with these regulations, shall be subject to removal.

"6. All passengers carried by this Company are subject to these Rules and Regulations, and all Company drivers, dispatchers and supervisors are instructed and directed to enforce them.

"VIRGINIA STAGE LINES, INC."

The bus had a seating capacity of thirty-seven passengers. On the trip in question, eight or nine seats were vacant, some in front of Mrs. Taylor and some behind her. Back of her there were seated several white persons. Upon her continued refusal to move her seat to the rear, the operator of the bus deviated from his regular scheduled route and drove to Fairfax County Court House, Virginia, where he obtained the warrant upon which she was tried. She was there removed from the bus. This occurrence caused a delay of about an hour and a half in the regular schedule of travel. There was no cursing, abusive language, or disturbance other than the delay and deviation mentioned. The remaining passengers on the bus were not otherwise disturbed, and only a few heard a part of the conversation between Mrs. Taylor and the bus driver.

The bus driver testified that "She said in a very loud

voice at one point 'I will not move.' That is just about all there was to it except she absolutely and blankly refused to move or leave the bus."

It was admitted that the carrier did not apply a single, uniform rule as to seating arrangements for the different races in interstate motor travel. Its regulations as to such seating arrangements were sought to be applied subject to local rather than national requirements. When Mrs. Taylor got on the bus in Washington, D. C., its driver said: "I suggested the defendant move. It was not a company regulation in Washington. I explained that to her. It would be up to her discretion as to whether she would like to wait until she arrived in Virginia or do so in Washington."

The plaintiff in error contends that the evidence was insufficient to show that she was guilty of any disorderly conduct; that Virginia Code, 1942 (Michie), section 4533a is vague and ambiguous; and that the statute as applied by the trial court is an unconstitutional regulation of interstate commerce and an unconstitutional delegation of legislative power.

On the part of the Commonwealth, it is contended that the carrier had the right to adopt and enforce regulations providing for racial segregation on its conveyances; and that the operator of the bus thus had lawful authority to request Mrs. Taylor to move accordingly, and that her refusal to do so constituted an "unnecessary disturbance."

In *Lewis* v. *Commonwealth,* 184 Va. 69, 34 S. E. (2d) 389, decided June 6, 1945, it was held that disorderly conduct is not a common law crime, and that Virginia Code, 1942 (Michie), section 4533, did not cover disorderly conduct "on a common carrier known as a bus."

At the next session of the General Assembly, by an act approved March 26, 1946 (Acts of 1946, page 494), Code section 4533a was enacted. The Act reads as follows:

"An ACT to amend the Code of Virginia, by adding a new section numbered 4533a, to provide punishment for

riotous or disorderly conduct in certain public places and to permit cities and towns to parallel this section.

"Be it enacted by the General Assembly of Virginia:

"1. That the Code of Virginia be amended by adding a new section numbered forty-five hundred thirty-three-a, as follows:

"Section 4533a. Riotous or disorderly conduct in certain public places.—If any person behaves in a riotous or disorderly manner in any street, highway, public building, or any other public place, other than those mentioned in the preceding section, or causes any unnecessary disturbance in any street car, railroad car, omnibus or other public conveyance, by running through it, climbing through windows or upon the seats, failing to move to another seat when lawfully requested to so move by the operator, or otherwise annoying passengers or employees therein, he shall be guilty of a misdemeanor."

█ It is conceded that Code, section 4533a is purely a disorderly conduct statute, intended to cure an omission in Code, section 4533, the prior statute. The amendment does not make the mere refusal of a person "to move to another seat when lawfully requested to so move by the operator," a criminal offense. It does not provide for the racial segregation of passengers on a public conveyance, with a penalty for non-conformity. It defines a separate and distinct crime —disorderly conduct—an offense, arising from personal misconduct and misbehavior as distinguished from an offense arising out of the violation of a segregation statute.

The principles dealt with in the cases of *Hall* v. *DeCuir*, 95 U. S. 485, 24 L. Ed. 547, and *Chiles* v. *Chesapeake, etc., R. Co.*, 218 U. S. 71, 30 S. Ct. 667, 54 L. Ed. 936, relied on by the Attorney General, are not here involved. The facts and procedure in each of those cases were unlike those here. They were civil proceedings, actions to recover damages for alleged personal wrongs; the case before us is a criminal prosecution dependent upon a State statute.

█ The gist of the crime charged against the defendant is "riotous or disorderly" conduct or misbehavior in a pub-

lic conveyance. The general words "any unnecessary disturbance," employed in the statute, Code, section 4533a, relate to the particular class of personal conduct specifically first mentioned in the statute, and include only conduct of the same class or kind. Any other construction could make an offense of almost any act a judge or jury might think "unnecessary."

Admittedly, the request of the driver of the bus that the defendant move her seat was based on a rule of the carrier and not on any provision of law. The refusal of the defendant to obey such request constituted, at most, a breach of the rules and regulations of the carrier. As such breach, it related only to the dealings and acts of private persons,— the defendant and the carrier.

The General Assembly alone has power to define crimes against this Commonwealth. This power cannot be delegated to the courts, or to individuals, or corporations. Code, section 4533a does not purport to delegate any such authority to a common carrier.

While common carriers may adopt and enforce reasonable rules and regulations, independent of statutory authority, for the conduct and management of their business, they are wholly without power to provide that a violation thereof shall constitute an offense punishable by fine or imprisonment.

The rules and regulations of the Virginia Stage Lines, Inc., hereinbefore set out, do not undertake to make the failure or refusal of a passenger to occupy a seat in conformity therewith a criminal offense. They provide simply that upon such failure or refusal the passenger shall be "subject to removal."

It is very clear from the evidence that Mrs. Taylor, an interstate passenger, was requested to move her seat because of her race and color, and that her refusal to so move constituted the real basis of the charge against her. She was sitting peaceably in a seat when she was approached by the operator of the bus. She had not disturbed any person or persons, or caused any commotion affecting, in any de-

gree, the peace or good order of the bus. Neither her words nor her acts had a vicious or injurious tendency, offensive to good morals or public decency. She merely insisted upon what she deemed to be her rights. She was guilty of no definite misbehavior or misconduct in the sense that she was disorderly or turbulent. The movements of the bus were directed by its operator. The delay and the deviation in its operating schedule were dependent upon the determination and wish of its operator, and not upon any control of the defendant.

For the foregoing reasons, we are of opinion to reverse the judgment of the trial court, and dismiss the proceeding against the appellant.

*Reversed and final judgment.*