**Electronically Filed
Supreme Court
SCWC-12-0001077
28-FEB-2017
07:46 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

LAULANI TEALE,
Petitioner/Defendant-Appellant.

SCWC-12-0001077

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0001077; CASE NO. 1P1120005320)

FEBRUARY 28, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case requires us to consider the definition of "tumultuous behavior" as a form of conduct on which a conviction under Hawaii's disorderly conduct statute may be based. The State, in its prosecution of Laulani Teale for disorderly conduct, and the Intermediate Court of Appeals, in affirming Teale's conviction, have offered various and conflicting

definitions of the term "tumultuous behavior." We address the meaning of "tumultuous" to settle this issue of first impression and also determine whether the evidence presented at trial was sufficient to support Teale's conviction under the statute.

## I. BACKGROUND

On May 1, 2012, Laulani Teale attended the annual May Day event held at Kapiʻolani Park with members of DeOccupy Honolulu to petition the Honolulu mayor (Mayor) regarding actions of the City and County of Honolulu. While in attendance, Teale was arrested for disorderly conduct. The complaint filed by the State alleged the disorderly conduct charge as a petty misdemeanor offense, in violation of Hawaii Revised Statutes (HRS) § 711-1101(1)(a) and (3) (1993 & Supp. 2003)[1]:

---

[1]     HRS § 711-1101 provides, in relevant part:

> (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:
>
> > (a)  Engages in fighting or threatening, or in violent or tumultuous behavior;
>
> . . . .
>
> (3) Disorderly conduct is a petty misdemeanor . . . if the defendant persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

HRS § 711-1101 (1993 & Supp. 2003).

On or about the 1st day of May, 2012, in the City and County of Honolulu, state of Hawaii, Laulani Teale, also known as Leslie Ann Hoalani Table, with intent to cause physical inconvenience and/or alarm by a member or members of the public and/or recklessly creating a risk thereof, did engage in fighting and/or threatening and/or in violent and/or tumultuous behavior persisting in disorderly conduct after reasonable warning or request to desist thereby committing the offense of Disorderly Conduct, a petty misdemeanor, in violation of Section 711-1101(1)(a) and (3) of the Hawaii Revised Statutes.

Following her not guilty plea, Teale proceeded pro se at a trial held before the Honolulu District Court of the First Circuit (district court).[2] The State called Honolulu Police Department (HPD) Officers Keoki Duarte and Nalei So'oto to testify regarding Teale's conduct at the May Day event. The State also called two employees of the City Department of Parks and Recreation who were involved in organizing the event.

According to the testimony of the State's witnesses, Teale was accompanied by a group of people at the May Day event. Teale was observed walking around the area with signs and blowing a conch shell. At one point, Teale blew the conch shell several times while standing in a grassy area located about fifty to sixty yards away from the Kapi'olani Bandstand (Bandstand). Teale was also described by the State's witnesses as having walked in front of the Bandstand two to three times,

---

[2]     The Honorable Dean E. Ochiai presided over the trial proceedings in this case.

3

which obstructed views of the performances and caused the performances to be paused for a few minutes each time so that police officers could escort Teale away from the Bandstand.[3]

While at the May Day event, Teale attempted three to five times to approach the Mayor to speak with him.  HPD officers "intervened" to advise Teale that she needed to use the proper protocol to meet with the Mayor and that attempting to do so at the May Day event was inappropriate.  Teale was described as being "aggressive" in seeking to meet with the Mayor--stating several times to officers, "I want to meet the mayor," being "persistent" in wanting to "ask [the Mayor] certain questions," becoming "frustrated" when the police intervened and prevented her from talking to the Mayor, being "loud," and being disruptive to persons watching the May Day program.

The culminating event leading to Teale's arrest occurred during her final attempt to speak with the Mayor while he was seated in the audience watching the performances.  Before reaching the Mayor, however, Teale was surrounded by three HPD police officers who arranged themselves in a semi-circle formation.  According to the testimony of Officer Duarte, Teale

_____

[3]     Hiroshi Douglas Matsuoka, one of Teale's witnesses at trial, disputed that Teale interfered with the May Day event performances and testified that Teale did not at any time block the view of the audience or interrupt any performers.

was carrying a conch shell and the police officers were concerned because a conch shell can be used "for anything," "[j]ust like a pen in [the officer's] pocket."[4]  After repeating that Teale could not speak with the Mayor and informing her that she needed to step away from the area, Officer Duarte placed Teale under arrest for disorderly conduct.  Teale either sat down on the ground before she was arrested, during her arrest, or immediately after her arrest.[5]  The officers instructed Teale to "stand up and walk away and just go to the side," and in response, Teale stood up and began walking around the officers in the general direction of the Mayor.  The officers then "picked [Teale] up and then [they] took her away."

Officer Soʻoto testified that Teale was not violent, confrontational, or threatening.[6]  The officer explained that

---

[4]     At various points in their testimony, Officers Duarte and Soʻoto expressed concern that Teale was holding a conch shell because of the potential that it may have been used to "hit somebody with it."  However, Officer Soʻoto testified that Teale "[was not] arrested for anything pertaining specifically for the conch shell."

[5]     Though Officer Duarte initially testified that he placed Teale under arrest before she sat down on the ground, he subsequently testified that she was only arrested after she sat down.  When Officer Duarte was asked again whether Teale was placed under arrest prior or subsequent to her sitting down on the ground, Officer Duarte responded, "I can't recall."

[6]     When asked at trial whether Teale was "tumultuous," Officer Soʻoto responded, "Tumultuous?  Why -- what's -- what's the word?  I mean [Teale] [was] disrupting.  [Teale] [was] disruptive, and several people was affronted by [her] behavior."

"the conch shell had nothing to do with [Teale's] arrest" and the conch shell was not taken into evidence.  There was also no evidence that Teale was screaming, shouting, or belligerent at any time during the May Day event or in her interactions with police officers or spectators.

However, attendees at the event were described as "agitated," "frustrated," and "mad" because of Teale's interruption of the performances.  Many members of the crowd were focused on HPD's interactions with Teale, in part "because there were a bunch of policemen there."  One of the State's witnesses indicated that audience members yelled for HPD to remove Teale from the area and shouted at Teale that she was ruining the show and should leave the festival.

The State also introduced eight clips from a video of the events leading to Teale's arrest that was provided to the State by Teale during discovery.  The first four clips show Teale standing in a grassy area on the outskirts of a crowd and blowing a conch shell while the Mayor and other individuals address the audience from the Bandstand.

The fifth clip shows scenes during Teale's final attempt to speak with the Mayor.  Teale is standing amidst the audience in front of the Bandstand with her head bowed and holding the conch shell at waist-level with both arms; she is

6

surrounded on three sides by HPD police officers and is speaking in Hawaiian at a normal volume.  As police officers ask her to move, Teale sits down and continues speaking in Hawaiian.  Audience members can be heard urging, "Go away, go away," while Teale remains seated on the ground with her arms circling her legs and her head bowed.  An audience member and three police officers continue to surround Teale.  In the sixth clip (which is an immediate continuation from the fifth clip), Teale stands and walks towards the Bandstand; when she is quickly approached by two police officers, she sits back down on the ground.  HPD officers grab her arms, in response to which Teale states, "I can sit here."  Teale remains seated with her arms resting in her lap, occasionally gesturing with her hands[7] as she speaks to the surrounding police officers and audience members.  Performances can be heard proceeding on the Bandstand off-camera.  The seventh clip shows HPD police officers carrying Teale away, and audience members can be heard clapping and cheering.  The eighth clip depicts police officers placing Teale in handcuffs.

---

[7]     When Teale is seen gesturing with her hands in the video, she leaves the conch shell sitting in her lap.

At the conclusion of trial, the district court found Teale guilty of disorderly conduct in violation of HRS § 711-1101. The court considered that although Teale may have "started the day with the best of intentions . . . [her] own video pretty much blows [her] entire case." The court reasoned that Teale's actions in repeatedly blowing the conch shell "show[ed] pure disrespect for the program" and that her decision to attempt to "see the mayor no matter what" eventually "led [her] on the path towards disorderly conduct." In her effort to communicate with the Mayor, the court noted that Teale "didn't sit to peacefully observe the program," but rather, "sat to create a spectacle." The court specified that Teale's "conduct became disorderly" when she "made repeated attempts in front of the audience to try and get to [the Mayor] despite being given warnings by the police do not do that."

The district court stated that "all" of the audience members were "being inconvenienced or annoyed" by Teale's actions. The court elaborated that the effect of Teale's behavior was demonstrated by the audience's reaction to Teale being carried away by police officers, when spectators were "heard to be clapping and cheering that the obstruction to their enjoyment of the program was being removed." With respect to the conch shell, the judge stated that "[he] underst[ood] a

8

practitioner would never use a conch as a weapon," but indicated that things which are not intended to be weapons may still be used to inflict harm. The court did not reference the terms "fighting, "threatening," "tumultuous," or "violent" in its oral findings, but rather, repeatedly described Teale's conduct as "disorderly."[8]

The court sentenced Teale to six months of probation, seventy-five hours of community service, and $105 in fees and assessments.

## II. ICA PROCEEDINGS

Teale filed a notice of appeal to the Intermediate Court of Appeals (ICA) asserting that there was insufficient evidence to support her conviction.[9] Specifically, Teale contended that the evidence failed to prove that she committed

---

[8] The district court also did not indicate that Teale was found guilty under the subsection of the disorderly conduct statute under which she had been charged.

[9] In her appeal to the ICA and before this court, Teale also asserted the following errors: (1) the district court erred in finding the State's witnesses credible; (2) her conduct was protected by the First Amendment; (3) her right to due process was violated; and (4) the district court erred in not allowing Teale to present additional clips from the video footage or to assert other defenses. In light of our disposition of Teale's challenge to the sufficiency of evidence to support her conviction, we do not address the remaining points that Teale raises.

the requisite actus reus because she did not fight, threaten, or engage in violent or tumultuous behavior.[10]

In a Summary Disposition Order (SDO), the ICA concluded that there was sufficient evidence to show that Teale engaged in "tumultuous behavior" within the meaning of the disorderly conduct statute. Citing Dictionary.com, the ICA defined "tumultuous" as: (1) "full of tumult or riotousness; marked by disturbance and uproar"; (2) "raising a great clatter and commotion; disorderly or noisy"; and (3) "highly agitated, as the mind or emotions; distraught; turbulent." Also citing Dictionary.com, the ICA defined "disorderly" as: (1) "characterized by disorder; irregular; untidy; confused"; (2) "unruly; turbulent; tumultuous"; and (3) "contrary to public order or morality."

The ICA noted that the "context of Teale's actions was a confrontation with the police in the midst of a well-attended May Day program." The ICA stated that when "[v]iewed in this context," Teale engaged in "tumultuous behavior" by repeatedly attempting to approach the Mayor, refusing to comply with police

---

[10] As part of her insufficiency of the evidence argument, Teale also contended that she did not have the requisite mens rea for a disorderly conduct conviction. The ICA concluded otherwise in its disposition of Teale's appeal. In light of our determination with respect to whether Teale engaged in the requisite actus reus as to the charge in this case, we do not consider her argument on certiorari regarding mens rea.

10

warnings and requests, and by disturbing members of the audience.  Therefore, viewing the evidence in the light most favorable to the State, the ICA concluded that the prosecution presented substantial evidence to show that Teale engaged in tumultuous behavior within the meaning of the disorderly conduct statute.

### III.     STANDARDS OF REVIEW

Statutory interpretation is a question of law reviewed de novo.  State v. Wang, 91 Hawai'i 140, 141, 981 P.2d 230, 231 (1999).

"When reviewing the legal sufficiency of the evidence on appeal, the test is whether, 'viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact.'"  State v. Hirayasu, 71 Haw. 587, 589, 801 P.2d 25, 26 (1990) (quoting State v. Hernandez, 61 Haw. 475, 477, 605 P.2d 75, 77 (1980)).

### IV.     DISCUSSION

#### A.    HRS § 711-1101(1)(a)

A person commits the offense of disorderly conduct under HRS § 711-1101(1)(a) "if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person: (a) Engages in fighting or threatening, or in violent or tumultuous behavior."

11

HRS § 711-1101(1)(a) (1993 & Supp. 2003). Thus, HRS § 711-1101(1)(a) includes four alternative forms of conduct upon which guilt may be predicated.

The State asserted both at trial and on appeal that Teal's conduct constituted "tumultuous behavior,"[11] rather than "fighting," "threatening," or "violent" behavior. Likewise, the ICA in affirming the trial court's finding of guilt based its reasoning solely on its conclusion that "the State presented sufficient evidence to show that Teale engaged in 'tumultuous behavior.'"

The term "tumultuous" is not defined within the Hawaii Revised Statutes or by our jurisdiction's case law.[12] Thus, to

---

[11] At the outset of its closing argument during trial, the State asserted that Teale committed the offense of disorderly conduct "when she engaged in tumultuous behavior" at the May Day event. At no point on appeal or on certiorari has the State argued that Teale committed the offense of disorderly conduct by engaging in "fighting," "threatening," or "violent" behavior.

[12] At trial, the State initially cited the Merriam Webster's Dictionary definition of "tumultuous" as "loud, excited, and emotional." The State also cited Dictionary.com, which defined "tumultuous" as "riotous, marked by disturbance and uproar, raising a great clatter and commotion, disorderly or noisy" and "highly agitated as the mind or emotions or turbulent." Before the ICA, the State suggested an alternative definition of "tumultuous behavior" obtained from the Random House College Dictionary (1973):

> [F]ull of tumult or riotness; marked by disturbance and uproar . . . raising a great clatter and commotion; disorderly or noisy . . . highly disturbed or agitated, as the mind or emotions; distraught; turbulent.

The State also provided a definition of "tumultuous" from Webster's New Riverside Dictionary (Office Ed. 1984) as "[c]onfusedly or violently

(continued. . .)

review whether the evidence presented at trial was sufficient to support Teale's conviction under HRS § 711-1101(1)(a), we must first consider the definition of "tumultuous behavior."

### B.   Definition of "Tumultuous Behavior"

Although a clear definition of the term "tumultuous" is absent in our statutes and case law, guidance as to the applicability of the disorderly conduct offense is provided by the Commentary to HRS § 711-1101, which may be used as an aid in understanding this provision[13]:

> The offense of "disorderly conduct" has been very broadly defined in the past . . . to include numerous petty annoyances to the public.  Section 711-1101 gives a far narrower definition to the offense, both because some of the matters previously treated under that heading are now treated elsewhere and because some of the previous provisions seem unwise.

HRS § 711-1101 cmt. (1993) (emphasis added).  Specifically, as to HRS § 711-1101(1)(a), the applicable subsection in this case, the Commentary provides additional insight as to the meaning of "tumultuous behavior":

> Subsection (1)(a) is a standard clause in disorderly conduct legislation, aimed at actual fights and at other behavior tending to threaten the public generally, for this

---

(. . .continued)

agitated."  The ICA in its SDO provided its own definitions, which are recounted above.

[13]   See HRS § 701-105 (1993) ("The commentary accompanying this Code shall be published and may be used as an aid in understanding the provisions of this Code, but not as evidence of legislative intent.").

> section requires public alarm, etc., as distinguished from the private alarm which may accompany assault. This is an important point. A person may not be arrested for disorderly conduct as a result of activity which annoys only the police, for example. Police officers are trained and employed to bear the burden of hazardous situations, and it is not infrequent that private citizens have arguments with them.

Id. (emphasis added).

The Commentary thus indicates that subsection (1)(a) of the disorderly conduct statute is directed at the inclusion of actual fights and other behaviors tending to threaten the public generally, the exclusion of petty annoyances and conduct directed only at police officers, and an interpretation of the statute that is "far [more] narrow[]" than broad. See id. Though not directly defining "tumultuous," cases of our jurisdiction also support this general reading of the statute. See, e.g., State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d 1242, 1244 (1977) (noting that "mere public inconvenience, annoyance or alarm" is insufficient to impose criminal liability under disorderly conduct statute); State v. Faulkner, 64 Haw. 101, 105, 637 P.2d 770, 774 (1981) (considering that pedestrians and motorists stopping "of their own volition to satisfy their curiosity" by observing altercation between defendant and police officers "cannot be said to be physically inconvenienced or alarmed within the meaning of the [disorderly conduct] statute"); id. (finding insufficient evidence to support

14

conviction for unreasonable noise under disorderly conduct statute where "it [was] not even clear from the record whether it was the loudness of the defendant's voice or whether it was the presence of four uniformed police officers and their vehicles at the scene that was drawing people's attention to the area"); State v. Leung, 79 Hawai'i 538, 543, 904 P.2d 552, 557 (App. 1995) ("[a]rguments with the police, without more, do not fall within the ambit of the disorderly conduct statute"); id. at 544, 904 P.2d at 558 ("[T]heater patrons waiting for or exiting a movie who, of their own volition, stop or slow down to satisfy their curiosity about an encounter between Defendant and the police in a theater lobby cannot be said to be physically inconvenienced or alarmed.").

Additional guidance on the interpretation of the term "tumultuous" as used within HRS § 711-1101(1)(a) is provided by the Model Penal Code. Hawaii's disorderly conduct statute is derived from Model Penal Code (MPC) § 250.2, and subsection (1)(a) is identical in the two codes.[14] Thus, the interpretation

---

[14]    MPC § 250.2 provides in relevant part:

> (1) **Offense Defined.** A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(continued. . .)

and application of MPC § 250.2 is instructive in defining the identical term in HRS § 711-1101(1)(a). See State v. Aiwohi, 109 Hawai'i 115, 126, 123 P.3d 1210, 1221 (2005) (determining that "it is appropriate to look to the Model Penal Code and its commentary for guidance" when interpreting criminal statutes derived from the MPC); In re Doe, 76 Hawai'i 85, 94-95, 869 P.2d 1304, 1313-14 (1994) (relying on the MPC and its Commentary to determine the scope and limitations of offense of harassment under HRS § 711-1106 (1985 & Supp. 1992)).

Although the Model Penal Code does not provide a definition of "tumultuous," its Commentary explains that MPC § 250.2 prohibits "mak[ing] orderly behavior criminal merely because others may create disorder in response thereto." MPC § 250.2 cmt. at 348 (Am. Law. Inst. 1980). Instead, MPC § 250.2 "is limited to conduct which is itself disorderly." Id. The Commentary specifies that subsection (1)(a) "requires that the actor engage in fighting or threatening, or in violent or tumultuous behavior." Id. (alteration and quotations omitted). Further with respect to subsection (1)(a), "[i]t is not

_____

(. . .continued)

> (a) engages in fighting or threatening, or in violent or tumultuous behavior . . . .

Model Penal Code § 250.2 (Am. Law Inst. (1980)).

16

sufficient that peaceable conduct by the actor prompts others to violence or disruption."[15]  Id.  Thus, the offense of disorderly conduct under the Model Penal Code prohibits only conduct that is itself disorderly and does not punish behavior merely because it prompts others to respond in a disruptive or chaotic manner.

Other jurisdictions that have adopted the language or a variation of MPC § 250.2 have likewise recognized that a definition of "tumultuous" need not depend on a riotous public response but, rather, may be defined by violent or extreme outbursts personal to the offender.  Such definitions of the term "tumultuous behavior" as incorporating the offender's own extreme conduct properly place the focus of the inquiry on the defendant's own behavior.  See MPC § 250.2 cmt. at 348.  For example, the Superior Court of Pennsylvania in Commonwealth v. Love relied on Merriam's Webster's Collegiate Dictionary (10th ed. 1996) in defining the term "tumultuous" as used in its disorderly conduct statute as "marked by tumult; tending or

_____

[15]    As an example of this point, the Commentary cites to Taylor v. Commonwealth, 46 S.E.2d 384 (Va. 1948).  In Taylor, an African-American woman used a "very loud voice" to refuse to move to the back of a bus when repeatedly commanded to do so, and the bus was delayed for an hour and a half while the driver detoured to a courthouse to secure her arrest.  46 S.E.2d at 386.  The woman's subsequent conviction for disorderly conduct was reversed on appeal because the offense required "personal misconduct and misbehavior" and did not apply where the woman herself was neither "disorderly [n]or turbulent."  Id. at 387.  The Commentary states that MPC § 250.2 was "drafted to reach the same result on the same ground."  MPC § 250.2 cmt. at 348.

disposed to cause or incite a tumult; or marked by violent or overwhelming turbulence or upheaval." 896 A.2d 1276, 1285 (Pa. Super. Ct. 2006) (quotations omitted). The Pennsylvania court, again citing Webster's, noted the definition of "tumult" as "a disorderly agitation . . . of a crowd [usually] with uproar and confusion of voices, or a violent outburst." Id. (emphasis added) (quotations omitted). The Love court concluded that the defendant's conduct was marked by overwhelming turbulence and thus constituted "tumultuous behavior" because he was vocally agitated, angry, yelling, and disruptive in a courthouse for an extended period of time and because he had "violently interfered with a law enforcement officer." Id. at 1279, 1285-86. Likewise, the Vermont Supreme Court in State v. Lund rejected an argument that "tumultuous behavior" must be defined by reference to a public riot or outcry, defining the term instead as a "violent outburst." 475 A.2d 1055, 1060 (Vt. 1984) (citing Webster's New International Dictionary 2733 (1961)), overruled on other grounds by State v. Begins, 531 A.2d 595 (Vt. 1987)); see also State v. Amsden, 75 A.3d 612, 618 (Vt. 2013) (considering Lund, 475 A.2d at 1060, and stating that it was "obvious that [the court] considered [the defendant's] 'outburst' to be the sort of 'tumultuous behavior' contemplated by the statute"); United Prop. Owners Ass'n of Belmar v. Borough

of Belmar, 777 A.2d 950, 990 (N.J. Super. Ct. App. Div. 2001) (defining "tumult" as "either 'uproar' or 'violent agitation of mind or feelings'" (quoting Webster's New American Dictionary 555 (Smithmark 1995))).

Considering the Commentary to HRS § 711-1101, the MPC Commentary to the identical provision of MPC § 250.2, and relevant case law, "tumultuous behavior" is most appropriately defined as conduct involving violent agitation or extreme outbursts. This definition is consistent with the Commentary to MPC § 250.2 in that an analysis of whether a defendant's behavior was marked by extreme outbursts or violent agitation requires the trier of fact to focus upon what the defendant personally did, rather than how onlookers or observers reacted in response.[16] See MPC § 250.2 cmt. at 348 ("[I]t is not sufficient that peaceable conduct by the actor prompts others to violence or disruption . . . ."). This definition also reflects our jurisdiction's general consideration that the congregation and attention of curious bystanders is insufficient to support a

---

[16] We note that the result or effect of the defendant's conduct upon members of the public may be significant when determining whether the defendant acted with the intent to physically inconvenience or alarm a member or members of the public or recklessly created a risk thereof, so as to satisfy the mens rea component of HRS § 711-1101(1)(a). The response of the public to the defendant's conduct may also be circumstantial evidence that the defendant's behavior was tumultuous; however, its effect may not make behavior criminal "merely because others may create disorder in response." MPC § 250.2 cmt. at 348.

19

conviction for disorderly conduct under HRS § 711-1101.  See Faulkner, 64 Haw. at 105, 637 P.2d at 774 (bystanders stopping, slowing down, or congregating to observe altercation between defendant and police officers "cannot be said to be physically inconvenienced or alarmed within the meaning of the statute"); Leung, 79 Hawai'i at 544, 904 P.2d at 558 (same).  Further, an interpretation of the term "tumultuous" as marked by violent agitation or extreme outbursts is, with some variation, espoused by several dictionaries.  See Tumultuous, Random House Webster's Unabridged Dictionary (2d. ed. 2001) ("highly agitated, as the mind or emotions"); Tumultuous, The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search. html?q=tumultuous (last visited Jan. 10, 2017) ("[c]haracterized by mental or emotional agitation"); Tumultuous, The American Heritage Dictionary (Second College Ed. 1982) ("[c]onfusedly or violently agitated"); see also Hunter v. Allen, 422 F.2d 1158, 1164 n.14A (5th Cir. 1970) (Godbold, J., dissenting) (citing The Random House Dictionary of the English Language (1966) to define "tumult" as "[h]ighly distressing agitation of mind or feeling; turbulent mental or emotional disturbance"), rev'd on other grounds, Embry v. Allen, 401 U.S. 989 (1971); Lund, 475 A.2d at 1060 (citing Webster's New International Dictionary (1961) to define "tumult" as a "violent outburst").

20

The ICA's expansive definition of "tumultuous behavior" reaches far beyond conduct that is violently agitated or marked by extreme outbursts.  Under the ICA's definition, "tumultuous behavior" was defined to include any conduct raising a "great clatter and commotion" or "disturbance and uproar," and other actions that are "unruly," "disorderly or noisy," "irregular," or "contrary to public order and morality."  This definition would therefore include precisely the sort of "petty annoyances" that the legislature sought to exclude in Hawaii's disorderly conduct statute.  See HRS § 711-1101 cmt.  The ICA's definition would also require the trier of fact to focus its inquiry regarding "tumultuous behavior" on whether the members of the public affected by the defendant's conduct reacted in a way such that a "disturbance," an "uproar," or "a great clatter or commotion" resulted.  However, basing a conviction under the disorderly conduct statute on the actions and perceptions of others--rather than on the conduct of the defendant--conflicts with the MPC Commentary that expressly cautions against such application.  See MPC § 250.2 cmt. at 348 (MPC § 250.2 "does not make orderly behavior criminal merely because others may create disorder in response thereto").

An interpretation of the term "tumultuous" as requiring a manifestation of violent agitation or extreme

21

outbursts is also consistent with the settled principle of statutory construction that words are defined by the company they keep. State v. Deleon, 72 Haw. 241, 244, 813 P.2d 1382, 1384 (1991) ("There is a rule of construction embodying the words noscitur a sociis which may be freely translated as 'words of a feather flock together,' that is, the meaning of a word is to be judged by the company it keeps." (quoting Advertiser Pub. Co. v. Fase, 43 Haw. 154, 161 (Haw. Terr. 1959))). In Deleon, for example, this court considered that the term "extreme pain" as used in a statute providing a justification defense to abuse of a family or household member must be defined by reference to the terms it accompanied, which included "death, serious bodily injury, disfigurement, extreme metal distress[,] and gross degradation." Id. at 243, 813 P.2d at 1383 (citing HRS § 703-309). Because the pain inflicted by the defendant on his family member did not rise to a level "anywhere near" the accompanying terms, "[i]t therefore was not, as a matter of law," sufficient to constitute "extreme pain" within the meaning of the statute. Id. at 244, 813 P.2d at 1384.

Under HRS § 711-1101(1)(a), a person commits the offense of disorderly conduct when he or she "[e]ngages in fighting or threatening, or in violent or tumultuous behavior" with the requisite mens rea (i.e., "intent to cause physical

22

inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof").  HRS § 711-1101(1)(a).  Thus, the term "tumultuous" should be defined by consideration of behavior which is of a similar gravity to "fighting, threatening, . . . or violent" conduct.[17]

In its SDO, the ICA defined "tumultuous" as, inter alia, "disorderly or noisy," and "distraught"; in turn, it defined "disorderly" as including, "characterized by disorder," "irregular," and "contrary to public order or morality." However, conduct that is "noisy" or "contrary to public order or morality" cannot be fairly characterized as rising to the same intensity and seriousness as "fighting," "threatening," or "violent" behavior.  HRS § 711-1101(1)(a); see supra note 17. Thus, the definition of "tumultuous behavior" as conduct

_____

[17]    For example, "fighting" is defined by Merriam-Webster as "to contend in battle or physical combat" or "to strive to overcome a person by blows or weapons."  Fighting, https://www.merriam-webster.com/dictionary/ fighting (last visited Jan. 11, 2017).  "Threatening" is defined by Merriam-Webster as "to utter threats against," or "to hang over dangerously"; "threat," in turn, is defined by Merriam-Webster as "an expression of intention to inflict evil, injury, or damage."  Threatening, https://www.merriam-webster.com/dictionary/threatening (last visited Jan. 11, 2017); Threat, https://www.merriam-webster.com/dictionary/threat (last visited Jan. 11, 2017).  Finally, Merriam-Webster defines "violent" as "marked by extreme force or sudden intense activity," "notably furious or vehement," or "emotionally agitated to the point of loss of self-control." Violent, https://www.merriam-webster.com/dictionary/violent (last visited Jan. 11, 2017).

characterized by violent agitation or extreme outbursts is also consistent with principles of statutory construction.

Having resolved the definition of "tumultuous behavior," we next consider whether there was substantial evidence presented at trial to support a conclusion that Teale, with an intent to cause physical inconvenience or alarm by a member or members of the public or recklessly creating a risk thereof, engaged in behavior manifesting extreme outbursts or violent agitation at the May Day event in violation of HRS § 711-1101(1)(a).

### C.    Sufficiency of the Evidence

"[I]n reviewing the sufficiency of the evidence to support the conviction the appellate court must take that view of the evidence with inferences reasonably and justifiably to be drawn therefrom most favorable to the Government, without weighing the evidence or determining the credibility of the witnesses." State v. Cannon, 56 Haw. 161, 166, 532 P.2d 391, 396 (1975) (citation and internal quotations omitted).  "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." State v. Batson, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992) (citations omitted).

24

The district court in this case based its oral finding of guilt on Teale's blowing of the conch shell and its theoretical use as a weapon, her interference with the spectators' enjoyment of the May Day event and their resulting "inconvenience[] and annoy[ance]," and Teale's repeated attempts to speak with the Mayor despite the police officers' instructions that she could not talk with him.[18]  Thus, the question presented to this court is whether the State presented substantial evidence at trial that Teale's conduct constituted "tumultuous behavior," that is, whether Teale's conduct was violently agitated or marked by extreme outbursts.  See HRS § 711-1101(1)(a).

Both the State and the district court placed great reliance upon Teale's possession of the conch shell during the May Day event.  Police testimony, however, expressly refuted that the conch shell had anything to do with Teale's arrest, as Teale was not "arrested for anything pertaining specifically for the conch shell," and police did not take the conch shell into evidence for this reason.[19]  Further, although the district court

---

[18]    The ICA affirmed Teale's conviction based on her interaction with police officers, her efforts to speak with the Mayor, and the effect of her conduct on the audience.

[19]    Further, police testimony at trial suggested that any concern about the conch shell was based on the mere fact that Teale possessed it when

(continued. . .)

considered that Teale's blowing of the conch shell "show[ed] pure disrespect for the program," any such disrespect for the May Day event does not demonstrate that her conduct was characterized by violent agitation or extreme outbursts.

The State, the district court, and the ICA also focused on the fact that Teale made repeated efforts to approach the Mayor in order to speak with him despite being informed by police officers that it was not the right time to do so. However, the fact that Teale repeatedly sought to speak with the Mayor does not itself show tumultuous conduct. Testimony at trial reflects no evidence that Teale engaged in any form of extreme outbursts or that she acted violently agitated when she encountered the police officers. Though Teale may have disagreed or not complied with the police officers' orders, "[a]rguments with the police, without more, do not fall within the ambit of the disorderly conduct statute." State v. Leung, 79 Hawai'i 538, 543, 904 P.2d 552, 557 (App. 1995). Likewise, there was no evidence of Teale being confrontational with any other attendees of the May Day event. In fact, Officer Duarte

---

(. . .continued)

police interacted with her, and "[j]ust like a pen in [a] pocket," a conch shell could be "use[d] for anything."

26

testified that when Teale attempted to approach the Mayor during the last encounter that led to her arrest, Teale "just sat there," which was corroborated by the State's video evidence showing Teale seated on the ground. The video also demonstrates that immediately prior to and during this final attempt to speak with the Mayor, Teale was speaking in the same normal volume as the surrounding police officers,[20] she did not engage in outbursts, and she was not physically confrontational.

The State, the district court, and the ICA further reasoned that Teale's conviction was warranted because her actions caused the audience members at the May Day event to be inconvenienced and annoyed. However, HRS § 711-1101(1)(a) "is limited to conduct which is itself disorderly," and the offense requires that the defendant engaged in fighting, threatening, or violent or tumultuous behavior. MPC § 250.2 cmt. at 348 (Am. Law. Inst. 1980) (emphasis added) (the statute may not be used to "make orderly behavior criminal merely because others may create disorder in response thereto"). As described above, even considering the evidence in the most favorable light to the

---

[20] Even assuming that Teale spoke "loud[ly]" during her encounter with the police, as was argued by the State before the ICA, such conduct did not rise to the level of an extreme outburst based upon the evidence presented. It is noted that noise that becomes excessively "loud" may be prosecuted under subsection (1)(b) of the disorderly conduct statute, which prohibits the "[making] of unreasonable noise." See HRS § 711-1101(1)(b).

27

State, Teale's actions at the May Day event were not marked by violent agitation or extreme outbursts, and the reaction of the crowd "clapping and cheering that the obstruction to their enjoyment of the program was being removed" does not transform Teale's behavior into something it was not.[21]  Although Teale's conduct might well have constituted an annoyance to the public present at the May Day program, HRS § 711-1101 "gives a far narrower definition to the offense."  HRS § 711-1101 cmt. (1993); see also State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d 1242, 1244 (1977) ("mere public inconvenience, annoyance or alarm" is insufficient to impose criminal liability under disorderly conduct statute).

Our conclusion should not in any way be viewed as condoning Teale's behavior at the May Day event, and we are mindful that the State's evidence indicates that Teale temporarily interrupted the performances and caused irritation to spectators watching the performances.[22]  To that effect, we

---

[21]  As noted earlier, see supra note 16, the reaction of a member or members of the public may be relevant to the mens rea required for conviction under HRS § 711-1101(1)(a).

[22]  See In re Doe, 76 Hawai'i 75, 98, 869 P.2d 1304, 1317 (1994) ("We do not condone or encourage abusive language, but even crude speech may be entitled to constitutional protection . . . ." (quoting State v. John W., 418 A.2d 1097, 1108 (Me. 1980))); State v. Stocker, 90 Hawai'i 85, 96, 976 P.2d 399, 410 (1999) ("We emphasize that our opinion today should not in any way be construed as an expression of approval of the parental conduct that precipitated the prosecution of the matter before us.").

note that other statutes, ordinances, and rules may have been relevant to the conduct in this case.[23]  However, a criminal conviction based on "tumultuous behavior" under subsection (1)(a) of the disorderly conduct statute requires that Teale engaged in behavior marked by violent agitation or extreme outbursts.  Because the State did not present substantial evidence that Teale's conduct was "tumultuous" within the meaning of HRS § 711-1101(1)(a), there was insufficient evidence to support her conviction for disorderly conduct, and the ICA erred in affirming the conviction.

## V.    CONCLUSION

A determination that a defendant engaged in "tumultuous behavior" within the meaning of HRS § 711-1101(1)(a) requires a finding that the defendant's conduct was characterized by violent agitation or extreme outbursts.  Even

---

[23]     See City & Cty. of Honolulu, Dep't of Parks and Recreation, Rules and Regulations Governing Recreational Activities § 4.B(3), http://www.honolulu.gov/rep/site/dpr/rules/Rules_Recreational_Activities.pdf (last visited Feb. 8, 2017) (setting forth rule adopted by the director of the Department of Parks and Recreation that "[c]ity parks and recreational facilities may not be used for activities" which may, inter alia, "unreasonably interfere with . . . program activities"); Revised Ordinances of Honolulu (ROH) § 10-1.6(a) (1990 & Supp. 2013) (granting authorized law enforcement officers the ability to issue a citation for violation of certain park rules and regulations and "any rule adopted by the director"); id. § 10-1.6(a)(2) (authorizing arrest where "the alleged violator refuses to cease such person's illegal activity after being issued a citation"); see also HRS § 710-1010 (1993 & Supp. 2001) (setting forth offense of obstructing government operations); HRS § 852-1 (Supp. 2002) (setting forth offense of refusal to provide ingress or egress).

viewing the evidence presented in the light most favorable to the State, there was insufficient evidence in this case to support Teale's conviction under HRS § 711-1101(1)(a).  The district court thus erred in finding Teale guilty of disorderly conduct, and the ICA also erred in affirming the conviction. Accordingly, we reverse the ICA's August 25, 2016 Judgment on Appeal and the district court's November 15, 2012 Order and Decree of the Court.

Walter J. Rodby
for petitioner

Stephen K. Tsushima
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

